### 10703

### DAVIS v. CROZIER & CO.

#### (118 S. E. 377)

1. ATTACHMENT—CLAIM OF ATTACHED PROPERTY BY DEFENDANT HELD TO RAISE JURY QUESTION AS TO OWNERSHIP BY INTERVENER.—Where plaintiff attached certain property as the property of defendant, and another intervened, claiming the property, evidence that defendant declared over the telephone that the property was his, raised a question of fact to be determined by the jury, so that it was error to direct a verdict for the intervener.

#### ON PETITION FOR REHEARING

2. EVIDENCE—DECLARATIONS OF ASSIGNOR AS TO OWNERSHIP ARE NOT ADMISSIBLE AGAINST ASSIGNEE OF BILL OF LADING.—Declarations by the assignor of a bill of lading claiming to own the property covered thereby are not competent evidence against the assignee on the issue of ownership.

NOTE:  For right of third persons who claim property to intervene in attachment action, see note in 23 L. R. A. (N. S.), 536.

8. Appeal and Error—Objection Evidence Was Irrelevant Did Not Raise Objection That it Was Declaration Not Binding on Intervener.—On the trial of an intervention claiming attached property, an objection that declarations by the defendant claiming ownership of the property were irrelevant was insufficient to raise the objection that such declarations, which were clearly relevant, were not binding upon the defendant's assignee, who intervened to claim the property.

Before Gary, J., Anderson, 1920. Reversed and new trial ordered.

Action by T. L. Davis against W. H. Crozier & Co., in which State Bank & Trust Co. intervened and claimed the attached property. From directed verdict in favor of the intervener the plaintiff appeals.

*Mr. Leon L. Rice,* for appellant, cites: *Consignee not entitled to goods until draft is paid:* 72 S. C., 454. *Transfer back to consignee, revested title in them:* 4 R. C. L., 32.

*Messrs. Bonham & Allen,* for State Bank & Trust Co., respondent, cite: *Verdict properly directed:* 105 S. C., 128; 115 S. C., 137; 6 A. L. R., 234.

August 1, 1921.

The opinion of the Court was delivered by Mr. Justice Fraser.

The record shows:

"This action was brought in July, 1920. Defendant, a foreign corporation, doing business at Nashville, Tenn., shipped a carload of oats to R. W. Pruitt & Son at Anderson, S. C. The shipment was what is commonly known as 'order notify' shipment; the draft for the purchase price of the oats being attached to the bill of lading and sent to a local bank for collection. The draft was not paid, and the oats were reconsigned to Augusta, Ga.

"On July 7, 1920, at the instance of plaintiff, the Sheriff entered the car in which the shipment moved and attached 60 sacks of the shipment, removing them from the car.

Shortly thereafter the car was removed by the railroad to Augusta, Ga.

"On July —————, 1920, State Bank & Trust Company, a bank at Nashville, Tenn., in accordance with the provisions of section 287 of the Code of Civil Procedure, served on plaintiff's attorney a demand for the merchandise attached, claiming to be legally entitled to the possession thereof. This plaintiff denied, and thereupon the Court submitted the issue to the jury in the following form, viz.: 'Issue—Who was the owner of the oats attached in the car at Anderson, S. C., at the time of said attachment by the sheriff?'

"On plaintiff's motion and over objection of State Bank & Trust Company, the Court ordered that such issues as arose out of the action by plaintiff against defendant should be tried simultaneously with the trial of the issues between plaintiff and State Bank & Trust Company. The issues were so tried, and at the conclusion of the testimony the Court directed a verdict in favor of State Bank & Trust Company, and instructed the jury to answer the issue as above quoted, State Bank & Trust Company.' From the judgment entered thereon plaintiff appeals."

The plaintiff's witness Pruitt testified that he had conversation over the phone with Mr. Crozier after the draft was returned to Nashville in which "he said they were his oats and his draft." This raised a question of fact to be determined by the jury, and it was error to direct a verdict for the intervener.

The judgment is reversed, and a new trial ordered.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS concur.

MR. JUSTICE COTHRAN (dissenting): Action begun July 7, 1920, by plaintiff against the defendants W. H. Crozier & Co., upon a claim of $200 for commissions upon 10 cars of oats sold by the plaintiff as broker for account of Crozier & Co. to R. W. Pruitt & Son, of Anderson, S. C., on April 14, 1920. The plaintiff is a resident of Anderson, S. C.,

and said defendants are grain dealers in Nashville, Tenn. Jurisdiction of the defendants was sought to be acquired by the levy on July 7, 1920, of an attachment in said action upon 60 sacks of oats in a car at Anderson, claimed by the plaintiff to have been the property of the defendants, Crozier & Co. ·

Shortly after the levy (the precise date is not stated in the record), in July, 1920, the State Bank & Trust Company of Nashville, Tenn., in accordance with the provisions of Section 287 of the Code of Civil Procedure, made demand for the property attached claiming to be "legally entitled to the possession thereof." The plaintiff contested the claim of the bank.

It seems (though this is not entirely clear) that the plaintiff's attorney docketed the cause on calendar 3 and proceeded to establish the amount of his claim by testimony before a jury, under section 305 of Code.

Upon the claim of the bank and the denial of that claim by the plaintiff, the presiding Judge made up the following issue:

"Who was the owner of the oats attached in the car at Anderson, S. C., at the time of said attachment by the sheriff?"

The plaintiff's attorney insisted upon the trial of both issues, the amount of his claim and that of title, at the same time. The attorney for the bank objected. The Court ordered them tried simultaneously. This was erroneous. The issues were entirely distinct. The one was an ex parte proceeding by the plaintiff against the debtor defendant in default to prove his claim. The other an issue made on the claim of a third person and the denial of it by the plaintiff, which should have been placed on calendar 1, and tried by a jury, uninfluenced and uncomplicated by the fact to be established in the matter of the proof of the claim. As the verdict was directed in favor of the defendant

bank, and the plaintiff was the author of the error, there is no ground of reversal on account of it.

At the close of the testimony the Circuit Judge, upon the motion of the bank, directed a verdict in its favor. The record is silent as to the disposition of the default proceeding; nor does it contain a statement of the grounds upon which the motion for a directed verdict in favor of the bank was made or of the ruling of the Circuit Judge in sustaining it. We assume from the exceptions and the arguments of counsel that the motion was made and granted upon the ground that at the time the oats were attached the title thereto was in the bank.

The correctness of the Circuit Judge's action depends upon the necessary inferences to be drawn from the evidence.

The facts are these: On April 14, 1920, the plaintiff, a broker at Anderson, S. C., sold 10 cars of oats to R. W. Pruitt & Son for account of the defendants, Crozier & Co., grain dealers in Nashville, Tenn. Two of the cars were shipped, received, and paid for by Pruitt & Son. The third car was shipped "order notify" with draft attached to the bill of lading and forwarded through commercial channels for collection in the usual manner. For some reason, not explained in the record, the draft was not paid upon notice to Pruitt & Son, and was returned by the Anderson bank to its correspondents from whom it had been received for collection. Both the defendants, Crozier & Co., and the State Bank & Trust Company, offered evidence tending to show that the bank was a bona fide assignee of the draft and bill of lading at the time the draft was drawn and deposited with the bank which credited Crozier & Co.'s account with the amount of it less a discount and forwarded it as their own property for collection. There is no evidence in the case to the contrary. The statements of W. H. Crozier over the telephone to Pruitt were entirely inadmissible for the reason that in the issue of title the bank can-

8—S. C.—121

not be concluded by the declarations of its assignor. After the draft was returned from the Anderson bank to the Nashville bank, and before the attachment was levied—that is to say, on July 3, 1920—the Nashville bank charged the amount of the draft back to the account of Crozier & Co. Crozier testified, and in that he was in the main corroborated by the cashier of the bank, that after the draft was returned unpaid, and as a part of the transaction by which the draft was charged back to him, the oats were reconsigned by the bank to Augusta, Ga., and a new draft with new bill of lading attached was drawn upon Robertson & Co., and that the proceeds of this new draft were placed to the credit of Crozier & Co., the matter being handled by the bank, as the cashier testified:

"I took the matter of reconsignment up with the railroad for the bank and considered that the bank was handling the matter as its own, inasmuch as we had purchased the original bill of lading from W. H. Crozier & Co."

The bank retained possession of the original draft and bill of lading and made a substitution of them with the new draft and bill of lading.

From this statement of the facts as they appeared at the trial, disregarding as inadmissible the testimony of Pruitt as to the statements made over the phone to him by Crozier, it is clear that the second arrangement by which the new consignment, bill of lading, and draft were consummated was nothing more than a substitution of the original transaction and stands exactly upon the same footing. This latter arrangement having been concluded prior to this attachment, at the time of the attachment the title and the right to the possession of the shipment were in the bank, and not Crozier & Co.

It hardly requires authority to sustain the declaration that the bill of lading represents the property, and that an assignment of the bill of lading is a transfer of the title to the property.

One reasonable inference only can be drawn from the evidence: That the bank was originally a bona fide assignee for value of the bill of lading; that it has never surrendered the bill of lading or its rights under it; that the reconsignment was by its direction, the original bill of lading being surrendered by it to the railroad company and a new one issued; that the new arrangement was made as a substitute or continuation of the original, made necessary by the refusal of the consignee to pay the draft and take the goods and the immediate necessity for disposing of them. It is not the case of a bank originally holding the draft and bill of lading as a purchaser and upon dishonor of the draft compelling the drawer to take up the draft and receive back the bill of lading, thus revesting title in the drawer.

The circuit judge was right in directing a verdict for the bank, and the judgment below should be affirmed.

*Petition for Stay of Remittiture and Rehearing.*

To His Honor, T. B. Fraser, Associate Justice of the Supreme Court:

The petition of State Bank and Trust Company, intervener in the above-entitled action, respectfully shows:

(1) That the remittiture in the above-entitled case was filed with the clerk of the Supreme Court on the 1st day of August, 1921.

(2) That it appears from said remittiture that the Court did not decide the following question, which was fairly raised by the exceptions and the decision of which is necessary to a determination of your petitioner's rights, viz.: Was the testimony of plaintiff's witness Pruitt competent in determining the title to the draft and bill of lading under which your petitioner claimed the title to the property in question? Your petitioner's title to the property in question was derived from the purchase by your petitioner of the draft and bill of lading from Crozier. Pruitt testified over objection of your petitioner that Crozier in a long-distance telephone conversation claimed the title to the property in

dispute. That this testimony was incompetent and should not have been received is in full accord with the well-settled rule of law which forbids the acceptance. of the statements of the assignor of a negotable instrument to determine the rights of the holder thereof. *Crayton v. Collins,* 2 McCord, 457; *DeBruhl v. Patterson,* 12 Rich. Law, 363; 16 Cyc., p 996; Wigmore on Evidence, vol. 2, § 1084.

If this testimony had been excluded, as your petitioner contended, there would then have been nothing whatever to submit to the jury.

Wherefore your petitioner prays that the remittiture herein be stayed, and that a rehearing in the above-entitled case be granted.

And your petitioner, as in duty bound, will ever pray, etc. Bonham & Allen, Attorneys for State Bank & Trust Company, Intervener-Petitioner.

*On Petition for Rehearing*

October 15, 1921.

Mr. Justice Fraser: This is a petition for rehearing. The principle contended for, to wit, that evidence to show that an assignor or grantor has made statements derogatory to his title after the assignment or the execution of the grant is inadmissible, is unquestionably true, both in reason and on authority. The question as to the competence of the evidence was not raised on the trial. The objection was that it was irrelevant; i. e., did not relate to the matters in controversy. It certainly did relate to the matters in controversy.

The petition is dismissed, and the order staying the remittiture revoked.

Mr. Chief Justice Gary and Justices Watts and Fraser, concur.

Mr. Justice Cothran (dissenting): I think that the petition should be granted for the following reasons:

The only ground relied upon in the leading opinion for a reversal of the judgment is that an issue of title to the oats was raised by the declarations of Crozier, the consignor and drawer of the draft, made over long-distance telephone to Pruitt, the consignee, after he had assigned the bill of lading and indorsed the draft to the bank, to the effect that he still held the bill of lading, and that the oats were his.

It does not seem to me that the question of the inadmissibility of this testimony is open to argument. Crozier had sold the oats to Pruitt. He had shipped them under an order notify bill of lading and drawn upon Pruitt for the purchase price. He had discounted the draft with the bank and indorsed it, assigning the bill of lading to the bank. The bank was as completely the owner of the draft and the commodity covered by the bill of lading as if Crozier had made a deed to it for both. After the bank had thus acquired the draft and the bill of lading, the plaintiff, an attaching creditor of Crozier, in order to sustain his attachment and prove title to the oats in Crozier, offered a witness to prove the declarations of Crozier, made after he had parted with title in disparagement of his assignee's title and in support of his own—a proposition offensive not only to the rule against hearsay testimony, but the principle of estoppel, which closes the mouth of the assignor who would impeach the title which he had transferred and received value for.

As far back as 1823, in the case of *Crayton v. Collins*, 2 McCord, 457, the court declared:

"Declarations of the payee of a note before he has indorsed it, when he alone is interested and against his interest, have been allowed to be given in evidence; but his declarations after indorsement, which go to affect the interest of third persons, cannot be received."

In *De Bruhl v. Patterson*, 12 Rich. Law, 363, it was held that the declarations of an assignor of a note, made after the

transfer, were inadmissible when offered to invalidate the note. The Court quoted the following from *Borough v. White,* 10 Eng. C. L., 345:

"The right of a person holding a good title is not to be cut down by the acknowledgment of a former holder that he had no title."

In *Stouffer v. Erwin,* 81 S. C., 541, 62 S. E., 843, the plaintiff brought a suit as a holder in due course of a negotiable instrument. The defendant offered in evidence a letter written by the attorney for the original payee subsequently to the transfer, stating that he held the draft for the payee, and that it was its property. The circuit judge admitted the evidence. This court reversed the judgment for defendant upon the ground of error in admitting the letter, declaring:

"A declaration of an attorney for the (payee) cannot be evidence against this plaintiff, who is a different party. * * * It was incompetent to allow any testimony which the defendant had against the original payees until the defendant first offered testimony going to show that plaintiff was not a purchaser of said drafts before maturity for value."

In 16 Cyc., 996, it is said:

"Declarations made by a former holder of a negotiable instrument after it has been transferred by him are incompetent as against a subsequent holder; and the burden of proving, although not necessarily by direct evidence, that the declarations were made before transfer, is on the party offering them as evidence"—citing many cases, including the two from this state referred to above.

In 22 C. J., 361, it is said:

"Declarations of an assignor made after the assignment and notice thereof to the debtor are not admissible against the assignee or those claiming under him, provided the assignment was made in good faith, and a party who offers

the declaration of an assignor, as against an assignee or subsequent holder has the burden of showing affirmatively that the statement was made before the assignment."

In Wig. Ev., § 1984, it is said:

The holder of a negotiable instrument receives it from a prior holder free of equities and other defenses personal to the prior holder. In this lies the element of negotiability. Consequently the second holder's title is not identical with, and dependent upon, that of the first holder; and the admissions of the latter would (on the principle of section 1080) not be receivable against the former."

In Phillips, Evid. 608 (note by Cowan and Hill), it is said:

"But in other cases the bona fide holder, by his purchase of the bill or note, stands, in a great measure, independent of the former holder who indorsed or delivered the paper to him. The law disconnects him with the previous title, and takes him into its own charge, as deserving a right from itself. And hence, among other privileges, while it cuts him clear of all the previous hostile acts of his predecessors, it forbids that his declarations shall be used in derogation of those rights which he professed to confer."

The testimony of Pruitt was therefore clearly inadmissible and not binding upon the bank, which at that time was the owner of the draft and bill of lading. The declarations of Crozier could have been admissible only in impeachment of his testimony, after the grounds for contradiction had been properly laid, of which there is no showing.

This testimony constituting the sole ground for holding that an issue of fact was raised which should have been submitted to the jury, I think that the Court has overlooked the foregoing principle, and that the petition should be granted.