11196

DAVIS v. CROZIER & CO.
STATE BANK & TRUST CO., INTERVENER

(117 S. E., 309)

CARRIERS—ON BANK CHARGING RETURNED DRAFT TO SELLER'S ACCOUNT, TITLE REVESTED IN SELLER, THOUGH BANK WAS TO RESELL FOR SELLER'S ACCOUNT.—Where seller shipped oats under an "order notify" shipment, sold the draft with bill of lading attached to the bank, and on buyer's refusal of shipment the draft was returned unpaid and by the bank charged to seller's account, but the bill of lading retained by the bank under its agreement to take charge of and sell the oats for the seller's account, *held,* that shipment was subject to attachment by seller's creditors, as title to the oats had revested in seller.

Before Moore, J., Anderson, 1922.  Affirmed.

Action by T. L. Davis against W. H. Crozier & Co., in which the State Bank & Trust Co. intervened. From a directed verdict for plaintiff, the intervener appeals. Former appeals in this case will be found in 121 S. C., 99; 113 S. E, 377.

*Messrs. Bonham & Allen* for appellant.

*Mr. Leon L. Rice,* for respondent, cites: *Title transferred by Crozier can be transferred by the one to whom he transferred and it makes no difference that the transfer was back to the original owner:* 72 S. C., 450; 82 S. C., 471; 4 R. C. L., 32–4; L. R. A., 1915B, 537.

April 21, 1923.

The opinion of the Court was delivered by Mr. Justice Fraser.

W. H. Crozier & Co., of Nashville, Tenn., sold three carloads of oats to R. W. Pruitt & Son, at Anderson, S. C. 'It was what is known as an "order notify" shipment. Crozier went to the State Bank & Trust Company with a draft on Pruitt & Son, and sold the draft with the bill of lading attached to the bank. The oats arrived in Anderson, but Pruitt & Son did not pay the draft. The draft was returned to the bank. The record is not entirely clear as to whether the dishonored draft was simply charged to the account of Crozier, or Crozier gave his check to the bank for the amount of the draft. The bank then agreed to take charge of the oats, resell them, and place the proceeds of the resale to the credit of Crozier. The bank took charge of the oats and resold them. One carload of oats was attached and 60 sacks taken from it. The only question in this case is as to the ownership of the oats. The bank intervened in the action and claimed the oats. The plaintiff claims that the oats were the property of Crozier. Judge Moore, who tried the case, held that the oats were the

property of Crozier, and directed a verdict for the plaintiff. From the judgment entered upon this verdict, the bank appealed.

The appeal cannot be sustained. Crozier & Co. started with title. They assigned the bill of lading for their oats to the bank. When the draft was returned unpaid, the bank charged the unpaid draft to Crozier's account. The title to the bill of lading and the oats revested in Crozier, as a matter of law, unless there was an agreement to the contrary. The record shows no such agreement. The proceeds were to go to Crozier's account. The oats were to be resold for his benefit. We are bound by the record. It was incumbent on the bank and Crozier to show that Crozier parted with his title before the attachment was levied, and this they utterly failed to do. The legal conclusion from the admitted facts was that the title was still in Crozier, and his Honor was right in directing a verdict.

The judgment is affirmed.

MR. CHIEF JUSTICE GARY concurs.

CHRISTIE BENET, A. A. J. (concurring) : The plaintiff, Davis, brought this action against the defendant, W. H. Crozier & Co., asking payment for certain commission alleged to be due. Crozier & Co. were grain dealers in Nashville, and Davis was a merchandise broker in Anderson, at the time the suit was commenced. The plaintiff, on July 6, 1920, had attached 60 bags of oats, which were part of a consignment of three cars of oats shipped by Crozier & Co. to R. W. Pruitt & Son, merchants at Anderson. The State Bank & Trust Company of Nashville, Tenn., intervened in the action and claimed to be the owner of the oats. An issue was made up to try that question, and the matter came on to be heard before Circuit Judge Gary, who directed a verdict for the bank. An appeal was had, and the Supreme Court reversed the judgment and ordered the case remanded for a new trial, 113 S. E., 377. Upon the second trial be-

fore Circuit Judge Moore, a verdict for the plaintiff was directed, and the State Bank & Trust Company appeals.

The facts show that on June 14, 1920, three cars of oats were consigned "order notify" to R. W. Pruitt & Son, who had purchased them through Davis, as a broker acting for Crozier & Co. On the same day Crozier & Co. drew a draft on Pruitt & Son for the purchase price and sold the indorsed bill of lading and draft to the State Bank & Trust Company, receiving credit for the proceeds of the draft on their deposit account with said bank, less the usual commission. The law is well settled that on that date and by the act stated the bank became the owner of the draft and the bill of lading and therefore of the three carloads of oats.

The oats arrived at Anderson, and Pruitt & Son refused to pay the draft, take up the bill of lading, or receive the oats. The draft was returned to the State Bank & Trust Company at Nashville, and Crozier & Co. were at once notified that Pruitt & Son had refused to take up the draft. The testimony is not clear as to how Crozier & Co. paid the bank, but it is certain that Crozier & Co., on July 3, either gave the bank a check for the amount of the dishonored draft, or that the bank charged the amount of the dishonored draft to the account of Crozier & Co. The witness W. H. Crozier, called on behalf of the State Bank & Trust Company testified:

"After the return of the draft to the State Bank & Trust Company unpaid, it was charged against our account on July 3. I do not recall whether we paid it by check, or whether the bank merely charged it to our account. At the time we paid the draft on July 3, when it was returned unpaid, we took the matter up with Mr. Lovell, cashier of the State Bank & Trust Company, and paid it with the understanding that the bank would credit us with whatever was recovered from the shipment of oats represented by the

bill of lading. This understanding was had with the bank at the time we paid for the draft."

The witness, C. T. Lovell, cashier of the State Bank & Trust Company, confirmed this testimony.

The title to the oats in question was divested from Crozier & Co. by the payment to it by the bank of the amount of the draft, less the bank's charge for handling same, and the bill of lading was delivered to the bank as an outward and visible sign of the sale, and for convenience in handling the oats. The bill of lading attached to the draft then went to Anderson, sent there by its owner, the State Bank & Trust Company. Pruitt & Son refused to honor it, and it was returned to Nashville to the State Bank & Trust Company, whereupon the latter received from Crozier & Co. either a check or credit on its books— makes no difference which—and the title to the oats thereupon passed back into Crozier & Co. It does not change the law of the case that Crozier & Co., for convenience or any other reason, saw fit to leave the bill of lading in the hands of the bank at Nashville. The bank was then merely acting as agent for Crozier & Co., and its acts as such agent are not at issue in this case.

The following dates are undisputed and throw much light on the controversy: June 14, 1920, oats shipped by Crozier & Co. from Nashville to R. W. Pruitt & Son, Anderson, S. C.; June 14, 1920, bill of lading and draft attached sold to State Bank & Trust Company of Nashville, Tenn.; June 30, 1920, Bank at Anderson returned draft to the State Bank & Trust Company at Nashville, Pruitt & Son having refused to pay same; July 3, 1920, W. H. Crozier & Co. paid State Bank & Trust Company the amount of draft; July 6, 1920, sheriff at Anderson, S. C., attached the oats.

The title, therefore, had gone back into Crozier & Co. on July 3, 1920, and when the sheriff at Anderson, on July 6, 1920, entered one of the cars, and attached 60 bags of

oats, he was attaching the property of W. H. Crozier &
Co. as the true owner.   The Circuit Judge was therefore
right in directing a verdict to that effect, and the judg-
ment is affirmed.

MR. JUSTICE COTHRAN (dissenting) : On July 6, 1920, the
plaintiff, T. L. Davis, brought an action against the de-
fendants, W. H. Crozier & Co., upon a demand for certain
commissions alleged to be due the plaintiff, a merchandise
broker in Anderson, S. C., by W. H. Crozier & Co., grain
dealers in Nashville, Tenn.   At the time the action was
commenced, the plaintiff issued an attachment which was
levied upon 60 bags of oats, part of a consignment of three
cars by Crozier & Co. to R. W. Pruitt & Son, merchants
in Anderson, S. C.

The bank and trust company intervened in the action,
claiming to be the owners of the property, and an issue was
made up to try that question.   It was first tried before
Circuit Judge Gary, who directed a verdict for the bank.
On appeal this Court reversed the judgment and ordered
the case remanded for a new trial, 113 S. E.,377.   Opin-
ion filed but not yet [officially] reported.   Upon the second
trial before Circuit Judge Moore, he directed a verdict for
the plaintiff, and from that order the bank appeals.

The undisputed facts in the case appear to be as follows :

On June 14, 1920, Crozier & Co. consigned three car-
loads of oats to R. W. Pruitt & Son, who had purchased
them through the plaintiff as a broker acting for Crozier &
Co.   The shipment was what is commercially known as an
"order notify" shipment, which is too well understood to
require explanation.   Crozier & Co. drew a draft on Pruitt
& Son for the purchase price, and, attaching the indorsed
bill or lading to the draft, indorsed the latter and trans-
ferred both to the bank and trust company, receiving
credit for the proceeds of the draft on their deposit ac-
count with the bank.   Unquestionably then, the bank be-
came the owner of the draft and the bill of lading, the

latter representing the three carloads of oats. Thus being shown to have been the owner of the oats on June 14, 1920, the vital question is: Does the evidence unmistakably show that, at the time the oats were attached at the suit of the plaintiff against Crozier & Co., the title had passed out of the bank and become revested in Crozier & Co.?

When the oats arrived at Anderson, Pruitt, for some reason not explained, refused to pay the draft, take up the bill of lading, and receive the oats. It appears that at this time Davis, the plaintiff, had an unsettled claim against Crozier growing out of some former transaction, and whether or not the transaction with Pruitt was a *bona fide* one or a scheme on Davis' part, assisted by Pruitt, to get property of Crozier & Co. within the jurisdiction of the Court, I can only conjecture. The draft was returned to the bank in Nashville, and Crozier & Co. were promptly notified of Pruitt's refusal to take up the draft.

It is unfortunate that both Crozier and the cashier of the bank appear unable to give a clear account of what happened between them in disposing of the controversy thus created. Both of them testify that they could not remember whether Crozier gave the bank a check to cover the amount of the draft or the bank simply charged the amount of the draft back to Crozier & Co. It is inexplicable to me why, with the books and canceled checks before them they were not able to state positively this fact. The bank's books would certainly show how this matter was settled, and the books and canceled checks of Crozier & Co. should equally clarify the situation.

There is enough in the evidence to warrant the conclusion that Crozier & Co. did not give a check in payment of the dishonored draft, and that all the bank did was to charge the amount of the draft back on its books to Crozier & Co. This conclusion is entirely consistent with the retention of the draft and bill of lading by the bank. The conclusion that Crozier & Co. gave a check for the draft

is entirely inconsistent with the bank's retention of the
papers; for, if they had done so, unquestionably the draft
and bill of lading would have become the property again
of Crozier & Co. The cashier of the bank testified that
he agreed to reconsign the oats and apply the proceeds of
the sale to offset the charge for original draft of $1,798.65.
It is inconceivable that if this be true it is also true that
Crozier & Co. took up the draft with their check. Certain
it is that the bank retained the draft and bill of lading and
treated them still as its property, surrendering the original
bill of lading to the railroad company, and reconsigning
the oats to another party, and applying the proceeds of
the draft to the account of Crozier & Co.

The Circuit Judge, however, held that it did not make
the slightest difference whether Crozier & Co. took up the
dishonored draft with their check or had the amount of
the draft charged back to them upon the books of the bank;
that in either event title revested in Crozier & Co. on July
3, 1920, which was three days before the attachment was
levied on the 6th. He did not therefore consider the issue
at all.

I think that he was clearly in error in this conclusion,
which was the basis of his direction of a verdict. If
Crozier & Co. had given a check to the bank for the amount
of the dishonored draft, and had agreed that the bank
should still retain ownership of the bill of lading, recon-
sign the goods to another party and apply the proceeds of
the draft to the account of Crozier & Co., which appears
to have been overdrawn, the transaction would have been
perfectly legitimate, and would not have revested the title
to the bill of lading in Crozier & Co.

On the other hand, if the bank simply charged back the
amount of the dishonored draft on its books to Crozier &
Co., it would have been the height of simplicity to sur-
render the bill of lading to Crozier & Co. and have no se-
curity at all for the original advance.

The Circuit Judge seems to have been under the impression that, as soon as the amount of the draft was charged back on the books of the bank to Crozier & Co., the title to the bill of lading immediately revested in Crozier & Co.  If that be true, I cannot conceive of an easier method to negotiate a loan with a bank without any collateral security at all; all that need be done would be to make draft upon one known to be unreliable, have it returned dishonored, charged up to the drawee (which would be the ordinary business method of bookkeeping), and then demand the bill of lading held by the bank, upon the ground that when it simply made a bookkeeping entry against the drawer, the title revested in him.

It appearing to me that the bank unquestionably at one time had title to the oats, and that there was certainly some arrangement between it and Crozier by which the bank still retained the title, after the draft was returned, the Circuit Judge was in error in withdrawing the issue from the jury.

Granting that there is uncertainty in the evidence whether Crozier & Co. gave them check for the dishonored draft or simply had the bank to charge the amount back to them on its books, I think there was an issue of fact which should have been submitted to the jury under either contingency.

Certainly, even if Crozier & Co. gave their check for the draft, there was nothing to prevent them from agreeing that the bank should still retain title to the bill of lading, collect a draft upon reconsignment, and apply the proceeds to their deposit account as security for an overdraft or even upon open account.  With still greater confidence it may be asserted that, if the bank simply charged the draft back to Crozier & Co., it had the right to retain the bill of lading for the amount of the original advance.

MR. JUSTICE MARION concurs.