April 16, 1935. The opinion of the Court was delivered by
On the 19th day of August, 1931, the South Carolina Highway Department awarded to Sutton Bros., Inc., a certain contract for the construction of State Routes 14 and 183 in Pickens County, and on the same day, pursuant to the requirements of the highway department, Sutton Bros., Inc., as principal, and Union Indemnity Company, as surety, executed the usual highway bond in the sum of $105,444.88, in favor of the highway department, conditioned for the faithful performance of the contract.
Sutton Bros., Inc., entered upon the performance of this contract, but before the contract was completed it became financially involved and defaulted, and the Union Indemnity Company, as surety, exercised its rights and elected to complete the contract. On May 9, 1932, the Union Indemnity Company, with the approval of the highway department, entered into a written agreement with the defendant, W.H. Thomas, for the completion of the said highway projects, *Page 79 
and sublet the contract to him. The contract with Thomas incorporated by reference the specifications, contract, and bond between Sutton Bros., Inc., and the State Highway Department. Thomas was required to execute a surety bond in favor of the Union Indemnity Company in the amount of $95,000.00 for the completion of the contract with the Massachusetts Bonding Insurance Company, as surety, on said bond. Thomas entered upon the performance of this contract, but he too became financially involved and defaulted on November 1, 1932, whereupon the Massachusetts Bonding Insurance Company, through its own agents and representatives, took charge of, supervised, paid certain claims which were filed against Thomas, and continued with the prosecution of the work until the 17th day of January, 1933, at which time it abandoned the work.
The highway department was then forced to complete the projects; the completion of the same being relet by the highway department by a contract which is not material here. The projects have been completed to the satisfaction of the highway department, in accordance with the terms of the original contract between the highway department and Sutton Brothers, and Thomas' contract with the Union Indemnity Company above referred to, and without the highway department having to expend any more than the original contract price stipulated in the said contract of Sutton Brothers. The highway department has in its possession the sum of approximately $40,000.00 which represents the balance due on account of the completion of the projects, including the retained percentages, the said balance having accrued and become due as the result of the completion of the projects in accordance with the terms of Thomas' contract, which contract included by reference all the terms, conditions, specifications, etc., of the original contract between Sutton Brothers and the highway department. This fund now in possession of the highway department is the fund in controversy here. The highway department makes *Page 80 
no claim to the fund, being ready and willing to pay the same to such person or persons as the Court may direct, and the only claimants to the fund are the respondent, Massachusetts Bonding Insurance Company, on the one hand, and the appellant, together with another creditor of Thomas, Emmett Rogers, who levied an attachment under similar circumstances, on the other hand.
It is admitted that this fund is less in amount than the aggregate of the claims for materials furnished and labor performed on the projects in question, and which claims have been actually paid by the Massachusetts Bonding 
Insurance Company, the respondent herein, by reason of its liability as surety for Thomas.
The present action was commenced by service of summons and complaint by Brown Construction Company on the 2d day of February, 1933. This action was in the nature of a creditors' bill brought by Brown Construction Company for and on behalf of itself and all other creditors of the contractor, W.H. Thomas, and was brought against Thomas and the Massachusetts Bonding Insurance Company, as surety, on his bond. The defendant surety filed its answer in the cause admitting the execution of the bond but denying that it was liable to the plaintiffs on account of the execution of same.
On February 2, 1933, the matter was referred to J.C. Townsend, as Special Referee, by order of his Honor, W. H. Townsend, to call in creditors, take testimony, and report findings of fact and conclusions of law, and any special matters, which was complied with; said order of Judge Townsend also enjoining the highway department from paying out any funds due on projects and retained in its hands, pending outcome.
In May, 1933, Judge Townsend refused a motion by appellant to modify his order of February 2, 1933, by permitting the State Highway Department to disburse the sum of $3,040.55 out of the fund of $8,473.65 attached by the appellant *Page 81 
on October 18, 1932, in a cause of action against W. H. Thomas, arising out of the death of appellant's intestate, appellant having recovered a default judgment for that amount, including costs, in the Court of Common Pleas for Pickens County on the 8th day of March, 1933. Judge Townsend, however, allowed appellant to come in and file his claim based on the attachment of funds which were retained by the highway department and which were retained percentages accruing to W.H. Thomas, contractor, pursuant to the terms of said contract. The attachment in question was levied on the 18th day of October, 1932, which was before any default had been declared on the part of Thomas. Appellant filed his verified claim with the Special Referee, and relied solely for the payment of his claim against the fund which was attached in the hands of the highway department.
The Massachusetts Bonding Insurance Company objected to appellant's claim only in respect to priority, contending that Thomas, in his application to it for issuance of the bond, made an assignment to it of funds due and to become due by and retained by the highway department, and also claiming the right of subrogation.
On December 11, 1933, the Special Referee filed his final report, holding the bonding company liable under its bond and allowing against same all claims filed with him, with a few exceptions, one of which is the claim of appellant. The appellant excepted in due time to the final report of the Special Referee, and on January 12, 1934, the matter was heard before his Honor, H.F. Rice. On February 19, 1934, Judge Rice affirmed said final report as to claims aggregating approximately $55,000.00, all of which claims were for labor performed for, and materials supplied to, Thomas on account of and for the use of the projects in question, and which have been paid by the bonding company, and on July 3, 1934, Judge Rice signed an order affirming said final report as to this claim. *Page 82 
In due time, appellant gave notice of his intention to appeal to the Supreme Court from said order of Judge Rice, and from judgment entered thereon.
The sole issue raised by this appeal is whether the appellant or respondent has a superior or prior right to the attached fund in the hands of the State Highway Department. The appellant relies upon his attachment of the fund, and the respondent relies upon its rights on an assignment of the fund from the principal at the time the bond was issued and on its right of subrogation after having paid all claims for labor performed and materials supplied for the project in question.
As this appeal raises one issue, the various exceptions will be considered together.
Has the surety of the contractor Thomas, who is the respondent here, priority over appellant's claim by attachment because of the assignment of said fund to it by the contractor in his application for bond? The Court below held affirmatively, and appellant challenges this finding upon two grounds: (1) The assignment in terms did not become operative (it was a lifeless assignment) until there was a default by the contractor, and the appellant's attachment, having been levied before any default, then under the law as laid down in the case of National Loan Exchange Bankv. Gustafson, 157 S.C. 221, 154 S.E., 167, the equitable assignment to the surety in the application could not be superior to the legal rights of the appellant under his attachment; and (2) that the surety, by reason of our attachment laws and provisions contained in the contract between the contractor and the highway department, consented, waived, and is estopped to assert priority under its alleged assignment in preference to appellant's attachment.
Appellant apparently relies on the general principle of law applicable in ordinary attachments that where the property of a debtor is validly attached the attachment creates a lien from the date of levy and any judgment thereafter secured *Page 83 
becomes a preferred lien to be satisfied out of the attached property. It also appears that appellant's position is that the retained percentages held by the highway department constituted money due and owing to Thomas, the contractor, and that an attachment of such fund held it apart to satisfy such judgment as was obtained by appellant in his action against Thomas.
The general rule undoubtedly is that an attachment operates only upon such rights in property as the debtor had at the time of the levy, and the attaching creditor cannot by his attachment secure any greater or higher rights in the property than the debtor himself had, and, further, a levy of attachment cannot serve to displace prior liens or equities which parties other than the debtor have in the property. Corpus Juris states the principle as follows: "A levy under attachment merely creates a specific lien upon the property and takes it into the custody of the law to secure it against alienation of the debtor, and the judgments of other creditors and to hold it to be levied upon by execution when the judgment shall have been obtained. It operates only upon such rights in the property as the debtor has at the time of the levy, and cannot give to the attachment creditor any other or higher rights than the debtor then has, in the absence of fraud or collusion by which the attaching creditor's rights are impaired." 6 C.J., 242.
The question, therefore, arises as to what rights or interest the contractor Thomas had in the retained percentages held by the highway department which appellant sought to attach. If Thomas had no rights in said funds that were subject to attachment, then appellant's attachment of said funds could not create a lien in preference to others. An attaching creditor of Thomas could have no greater right to said retained percentages than Thomas himself had. It is very apparent that the retained percentages provided for in the construction contract were retained under the terms of the contract as security for the performance *Page 84 
of the contract and could not become due and owing to the contractor until the contract had been completed. To hold otherwise would render that provision of the contract nugatory. The logical conclusion, therefore, is that Thomas, having not completed the contract at the time of the attachment, could have made no claim against the highway department for the retained percentages, and that his attaching creditor could acquire no greater right than he had at that time. The question here is not the liability of Thomas to the appellant, or the liability of Thomas' bond to the appellant, but whether or not the attempted attachment of appellant of the retained percentages in the hands of highway department under Thomas' contract constitutes a preferred lien on said funds.
The appellant relies so strongly on the case of NationalLoan Exchange Bank v. Gustafson, 157 S.C. 221,154 S.E., 167, 173, that we deem an analysis of that case with the present case advisable.
In the Gustafson case the contractor secured a line of credit of $12,000.00 per month from the National Loan 
Exchange Bank of Greenwood, which was used to meet the pay roll and pay for materials furnished, and as security for this loan he gave an assignment of current estimates, and when the monthly estimate came in the loan would be paid and another loan for a like amount made for the next month. When the contractor, Gustafson, made application to the defendant surety for his bond, he expressly stated in the application that he was to arrange for a loan from the bank for the purpose of handling his contract, and he stated that as security for this loan he was to give an assignment of the current estimates for a temporary period to the bank. The Court, in discussing the bank's rights to the current estimate, said:
"With this knowledge on the part of the Surety Company it can hardly be contended that in writing this bond, it did not contemplate and consent that these estimates would *Page 85 
be so assigned, and if so, it would, of course, be bound thereby and the assignment would necessarily be prior to the assignment, taken in the same paper (the application) to the Surety Company. In this respect the case differs from the case of Standard Oil Co. v. Powell Paving ContractingCo., 139 S.C. [411], 442, 138 S.E., 184, and SumterTrust Co. v. Sumter County, 136 S.C. 15, 134 S.E., 209, where it was held that the assignment of the Surety Company took precedence over the assignment made to the Bank, for the reason that the Surety Company's assignment related back to the date of the application; whereas in this case, the application itself implies, if it does not so provide, that an assignment will be made which will have precedence over the assignment taken by the Surety Company for a general line of credit up to $15,000.00.
"The contractor having expressly stated to the Surety Company in his application, that it was his purpose to finance this work by making an assignment of his estimates for a line of credit up to $15,000.00, and the Surety Company having written the bond with the knowledge, and the assignment which it took being contained in the same paper, it necessarily means, if it means anything at all, consent on the part of the Surety Company that the contractor should so assign his estimates. This being so, it would be inequitable to allow the Surety Company, at this late day and time, to question an assignment made in accordance with this understanding between the parties."
Thus it will be seen that the holding in this case is based on the fact that the surety company had knowledge of the fact that the contractor was giving an assignment of the estimates and thereby consented to and subordinated its rights under its assignment to those of the bank to the fund.
The marked dissimilarity of the instant case to the Gustafsoncase is set forth below in the form of parallel columns: *Page 86 
THE GUSTAFSON CASE THE INSTANT CASE
1. The surety company, prior to 1. The surety here never the execution of the bond, consented, either expressly or consented and agreed that the impliedly, that retained percentages contractor could assign his current should be used for any purpose estimates to a bank (the other other than that provided in the claimant there) for the purpose of contract; namely, to insure the financing the work. completion of the contract and payment for labor performed and materials supplied on the project.
2. The funds loaned by the bank 2. The claim of the claimant were used for the purpose of here involved neither money, labor, carrying on the project and were or materials which went into the expended on the building in payment project. of pay rolls and materials.
3. The surety obtained a current 3. Here no right to a current estimate which was due to estimate is involved because no contractor prior to his default, current estimate had been earned and agreed that the bank's asserted at the time of the contractor's right to the current estimates abandonment of the contract. The should be transferred to the appellant's claim is asserted solely retained percentages and the against the retained percentages. surplus remaining in the contract after completion.
4. The surety prior to default 4. At the time appellant's obtained current estimates (which attachment was levied, no current really belonged to the bank) estimates were due the contractor, largly in excess of the bank's and the levy was made upon the claim under its assignment. retained percentages. In fact, no current estimates have been paid the surety, and the fund in the hands of the highway department consisted of retained percentages in hand at the time of the levy of attachment and estimates, including final estimate, which were earned after the contractor abandoned the contract.
5. That bank's claim was held 5. No claim is here made that to be a liability of the surety the surety is liable to the appellant under its bond. under the terms of the bond. *Page 87 
The Gustafson decision rested entirely upon the peculiar facts of that case, and the decision in nowise overruled the previous decisions of this Court in Sumter Trust Co. v.Sumter County, and Standard Oil Co. v. Powell Paving Contracting Co., supra, both of which cases are direct authority for the Circuit Judge's conclusion that the surety's right to the retained percentages is superior and prior to the rights of the attaching creditor.
Has the surety a prior right to the fund by reason of its equitable right of subrogation irrespective of its rights under the assignment made by the contractor? After the abandonment of the contract by the contractor, and the subsequent completion of same to the satisfaction of the highway department, the surety paid all claims for labor performed and materials supplied to the contractor. This was a duty the surety owed, and, having performed it, it was subrogated to the rights of the highway department to any funds remaining due on the contract. The rule is well settled that if and when the surety is forced to pay claims against the contractor its rights to the funds, which would have been due to the contractor, relate back to the time it entered into the contract, and, therefore, its rights are superior to the rights of the attaching creditors.
In Ex Parte Reynolds (In re Rock Hill Cotton FactoryCo.), 47 S.E., 728, 729, this Court, speaking through Justice Jones, thus states the general principle: "Subrogation, in equity, is that principle which substitutes a person who has paid a debt for which another is bound to all the rights and remedies of the creditor against that third party, provided he is not a mere volunteer, but made payment because his duty with respect to the contract, or his interest with respect to the property or securities concerned, compelled him. Thus, if a surety pays the debt of his principal, he is subrogated to the benefit of all securities, funds, liens, and equities which the creditor has against the principal." *Page 88 
After careful consideration of the entire case, we are of the opinion that all exceptions are without merit.
The judgment of the Court below is affirmed.
MR. CHIEF JUSTICE STABLER, MESSRS. JUSTICES CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE M.M. MANN concur.