PELZER MANUFACTURING CO. v. PITTS & HARTZOG.

BELTON MILLS v. SAME.

1. Estoppel—Stock—Attachment.—The claimant of stock is estopped from saying the instruction of jury to find that the partnership had no interest in the stock subject to attachment should be supported on the ground that the member of the firm from whom she claims was not shown to have any title, because she consented to the framing of the issue to that effect and resisted an effort to change it.

2. Attachment—Res Judicata.—Adjudication that a member of a firm is a bankrupt does not affect the right of partnership creditors to attach partnership assets. But this question is *res judicata* against appellant because she did not appeal from refusal to dissolve attachment on this ground.

3. Open and Reply—Actor.—Statute leaves it discretional with the trial Judge as to who he will require to be the actor in an issue framed under the statute to determine the ownership of property under attachment claimed by a third party.

4. Partnership—Assignment—Subrogation—Attachment—Equitable Interest is Subject to Attachment.—If a member of a partnership contribute to partnership capital his individual note secured by his individual stock certificate, and this note is discounted by a bank upon assignment of certificate of stock as collateral, and upon dissolution of partnership he takes the partnership assets and assumes the partnership debts and pays the note out of partnership assets, the partnership is subrogated to the rights of the bank, and he holds the certificate for the benefit of the partnership. His assignment of the stock conveys no title except to *bona fide* purchaser for value. This equitable interest of partnership in the stock is the subject of attachment under the attachment laws of this State.

Before Prince, J., Greenwood, April, 1906.     Reversed.

Trial of issue of ownership of stock attached in cases of, (1) Pelzer Manufacturing Co. against Pitts and Hartzog, and (2) Belton Mills against same defendants. From judgment directed in favor of claimant, Carrie E. Pitts, plaintiffs in both cases appeal.

*Messrs. Wm. G. Sirrine* and *Wm. N. Graydon,* for appellants, cite: *Question to be tried is, who is entitled to*

*hold the property:* 32 S. C., 320, 40 S. E., 218; 4 Cyc., 743; *As to rights of pledgee of stock:* 127 U. S., 534; 10 Cyc., 604; 12 L. R. A., 781; 22 Ency., 857, 859, 866, 867, 905; 105 U. S., 217; 93 U. S., 23; 95 U. S., 764; 21 Wall., 360; 2 Conn., 670; 11 Wend., 627; 22 Wink., 316; 34 N. Y., 80; 55 L. R. A., 796; 28 Ency., 233. *Pitts and Hartzog were subrogated to the rights of the bank:* 18 S. C., 131; Rich. Eq. Cas., 172; 41 S. C., 337; 58 S. C., 393; 3 Pom. Eq. Jur., 1300. *That Pitts was adjudged a bankrupt does not dissolve the attachment:* 62 S. C., 353.

*Messrs. J. F. J. Caldwell* and *J. B. Park,* contra; the latter cites: *Plaintiffs were properly made actors:* 255a; 32 S. C., 347; 1 Col., 495; 52 S. C., 238; 31 S. C., 266; 28 S. C., 530. *To what rights are plaintiffs subrogated:* 27 Ency., 208. *Subrogation is an equitable doctrine:* 7 Rich. L., 405; 26 S. C., 39; 27 S. C., 478; 20 S. C., 381; Pom. Eq. Jur., Section 1419. *But this doctrine cannot apply:* 56 S. C., 170; 52 S. C., 472; 34 S. C., 414; 15 S. C., 54; 3 S. C., 208; 69 S. C., 31; 64 S. C., 458, 363; 17 Cyc., 976. *Adjudication of bankruptcy discharged the attachment:* 99 Fed. R., 922; 96 Fed. R., 935; 143 Fed. R., 93; 188 U. S., 486; 190 U. S., 522; 196 U. S., 525. *Court was without jurisdiction to try the issue:* 25 S. C., 385; 28 S. C., 313; 30 S. C., 391; 34 S. C., 109; 37 S. C., 413; 51 S. C., 171; 17 Ency., 1060; 32 S. C., 319.

March 22, 1907.  The opinion of the Court was delivered by

Mr. Justice Woods.  On the 23d of January, 1903, M. B. Pitts and P. G. Hartzog entered into a partnership for the purpose of dealing in "cotton mill goods" in the city of Greenville under the firm name of Pitts & Hartzog.  Pitts was to contribute four hundred dollars and Hartzog two hundred dollars to the capital stock.  Hartzog was to give his entire time to the business, to receive and disburse all of the partnership funds, and to have complete charge of the

management of the firm affairs. After payment of expenses the profits or losses were to be shared equally.

On the 7th of March, 1904, Pelzer Manufacturing Company sued the firm of Pitts & Hartzog on an account for eight hundred and forty-one dollars and seventy-two cents, and a few days later Belton Mills brought a similar action for four hundred and twenty dollars and forty-six cents. In these causes warrants of attachment were issued by the clerk of Court of Greenville County, directing the sheriff to attach the property of M. B. Pitts, "especially a certain ecrtificate of stock in the Grendel Cotton Mills, Greenwood, S. C., known as No. 140B., for eight shares, and certain certificate of stock in said mills, known as No. 177, for two shares, and any other stock in said mills now in the hands of Mrs. Carrie E. Pitts, the wife of said M. B. Pitts." In response to the service of the warrant on her in the action brought by the Pelzer Manufacturing Company, Mrs. Carrie E. Pitts served a written notice on counsel for plaintiff, in which, after alleging her residence in the County of Greenwood and her ownership of the certificates of stock in the Grendel Mills mentioned in the warrant of attachment, and denying that M. B. Pitts had any interest in them, she demanded that the attachment be released, or the plaintiff execute to her the undertaking required by law, "and that an issue be made and tried in the County of Greenwood as to the ownership of the said property." A similar notice was served in the action brought by the Belton Mills; the demand as to the issue being that it be framed "as to the title of the said stock to be tried," etc. Within ten days the plaintiffs gave the undertaking demanded by Mrs. Pitts and required by Section 255a of the Code of Procedure.

On the 20th of June, 1904, the defendant, M. B. Pitts, individually, filed his petition in bankruptcy and was on that day duly adjudged a bankrupt by the District Court of the United States for the District of South Carolina and has since been discharged in bankruptcy. He named among other creditors the Pelzer Manufacturing Company and the

Belton Mills as creditors in his schedule of creditors, but in his schedule of assets made no reference to the ten shares of Grendel Mill stock.   On the 24th of August, 1904, Pelzer Manufacturing Company entered up judgment against the firm of Pitts & Hartzog, but having no force against M. B. Pitts as an individual, for eight hundred seventy-one dollars and eighteen cents and cost.   On the same day, Belton Mills entered up a similar judgment against the same parties for four hundred forty dollars and costs.

In November, 1904, counsel for Mrs. Pitts and counsel for the plaintiffs agreed in writing that the issue to be tried should be, "Are Pitts & Hartzog the owners of the ten shares of stock claimed by Mrs. Carrie E. Pitts."   Before this issue was called for trial, a motion was made on behalf of Mrs. Pitts to dissolve the attachment as far as it affected the certificates of stock, on the ground that M. B. Pitts had been adjudged a bankrupt within four months after the attachment had been issued.   This motion was refused.   The issue as agreed upon was then submitted to a jury and the result was a mistrial.

The same issue was again heard at the April, 1906, term of the Court of Common Pleas for Greenwood County. The presiding Judge, Hon. George E. Prince, holding that no evidence had been adduced tending to show that Pitts & Hartzog had any such interest in or claim upon the certificates of stock as would be the subject of attachment, directed the jury to write a negative response to the issue.   The appeal hinges on the correctness of this instruction; but before discussing that vital point it is necessary to dispose of several other matters which counsel on each side referred to and relied on.

On the part of Mrs. Pitts the effort is made to sustain the instruction to find in her favor on grounds additional to that upon which the Circuit Judge rested it.   The warrant of attachment runs, not against Pitts & Hartzog, but against M. B. Pitts individually; and the argument is, that such a warrant is not efficient to take the property of Pitts & Hart-

zog in the hands of a third party. The contention is also made, that the State Court was without jurisdiction to entertain any proceeding growing out of the attachment, because M. B. Pitts was adjudged a bankrupt within four months after the attachment was issued and the attachment was thereby annulled; and further by his subsequent discharge, the question whether he had title to the certificates of stock had become *res judicata* by the judgment of the District Court of the United States.

Attention to the nature of this proceeding will make obvious the unsoundness of these positions. The attachments were issued in causes instituted in Greenville County. When Mrs. Pitts claimed the certificates of mill stock she demanded the making up of the issue, which the statutes provides in such case "shall be made up under the direction of the Judge to try the question," to be tried in Greenwood County where she resided. The Circuit Judge adopted and submitted to the jury the issue as framed and agreed to by both parties to the controversy. Counsel for Mrs. Pitts successfully resisted the motion of plaintiffs' counsel to change the issue, insisting on its being tried precisely in the form agreed on. On these facts, Mrs. Pitts cannot be allowed to say in this appeal, that the instruction to find that Pitts & Hartzog had no ownership in the certificates subject to attachment should be sustained, because there was no evidence of such ownership in M. B. Pitts as an individual.

The same reasoning applies to the position taken as to the bankrupt proceeding. The firm of Pitts & Hartzog had not been adjudged bankrupts and the bankruptcy of M. B. Pitts, a member of the firm, would not affect the right of creditors to hold the firm property under attachment. But what is more convincing and conclusive on this point, that a motion made to dissolve the attachments, on the same ground as that here urged to sustain the instruction, was refused by the Circuit Court, and there was no appeal from the order refusing the motion.

We express no opinion as to what would be the effect of a finding by the jury that Pitts & Hartzog have an interest in the certificates of stock subject to attachment, when the attachment runs only against Pitts, a member of the firm. That question is not before us and we will not attempt to anticipate it.

The plaintiffs in their exceptions submit the Circuit Judge erred in requiring them to take the position of actors, thus imposing upon them the burden of proof. We are not inclined to lay down any hard and fast rule on this subject. The statutory provision applicable is, "that an issue shall be made up under the direction of the Judge to try the question." This implies discretion in the Circuit Judge, the liberal exercise of which may be very important in view of the infinite variety of relations the parties may sustain to the property in controversy. In this case there was certainly no abuse of discretion; for the general rule is, that the party in possession of the property has the right to require one claiming against him to prove his right to possession or interest in the property. *Carrigan* v. *Evans,* 31 S. C,. 266, 9 S. E., 852; *Central R. R. Co.* v. *Georgia Company,* 32 S. C., 347, 11 S. E., 162; *Bank* v. *Peterkin,* 52 S. C., 238, 29 S. E., 546. Besides the terms of the issue agreed to by the appellants implied they should take the affirmative. The issue submitted, "Are Pitts & Hartzog the owners of the ten shares of stock in the Grendel Mills, claimed by Carrie E. Pitts?" was properly interpreted by the Circuit Judge when he held the true inquiry to be, not whether Pitts & Hartzog had full and absolute title to the property, but whether their interest was such as under the law could be subjected to attachment proceedings.

We now consider whether the charge that the interest of Pitts & Hartzog was not of such a kind as to be subject to attachment can be sustained. The evidence offered by the plaintiffs tended to prove these facts bearing on the interest of Pitts & Hartzog in the stock: Some time after the partnership of Pitts & Hartzog had been

formed, an agreement was made to enlarge the business by going into the manufacture of suspenders. For this purpose Pitts agreed to contribute one thousand dollars additional to the capital stock. To raise this sum he made his note to the American Bank, attaching as collateral certificates for ten shares of stock of the Grendel Mills, his individual property. The firm of Pitts & Hartzog signed the note as surety. In case of default, the note authorized the bank, as attorney of the maker, with power of substitution, to sell the stock deposited as collateral without notice. Owing to a heavy fire loss the firm became involved and unable to meet its obligations. Thereupon an agreement of dissolution was made, by which the firm assigned all of the assets to M. B. Pitts; and he agreed to pay all of the partnership debts, including sixteen hundred and sixty-five dollars which, as the agreement recites, he had put into the business. Pitts took charge of the assets and with the partnership funds realized therefrom, paid the note for one thousand dollars held by the American Bank. The bank delivered to him along with the note the certificates of stock it held as collateral. Pitts, having signed the blank power of attorney printed on the back of the certificates, surrendered them to the Grendel Mills and took from that corporation a new certificate in the name of his wife, Mrs. Carrie E. Pitts, for ten shares of its stock, the sum of the two certificates surrendered. There was no evidence that Mrs. Pitts was a purchaser for value without notice.

Pitts having taken, according to the evidence, the firm assets to pay an individual debt, clearly the firm of Pitts & Hartzog was subrogated to the rights of the bank, including the right and interest of the copartnership in the right to possession of the note and collateral. Therefore, when the note and certificates passed into the possession of Pitts, he held them, not for himself, but for Pitts & Hartzog— the right and interest of the copartnership in them being by the subrogation precisely the same as the rights of the bank before it had been satisfied. Until actual payment of the debt by Pitts, any assignment of the note and collat-

eral for his individual benefit would be a fraud on the partnership, and confer no title against the partnership to any assignee except a *bona fide* purchaser for value without notice.

The bank was only pledgee of the stock; and, therefore, had not the absolute legal title to it, but a special property or lien as security for the debt, accompanied by the right of possession. But Sections 253 and 254, of the Code of Procedure, provide for making available under attachment "all books of account, vouchers and papers relating to the property, debts, credits and effects" of the debtor; and it will hardly be doubted that if the attachment had been obtained against the bank by one of its credtiors before the debt due by Pitts had been satisfied, his note and the certificates held as security therefor, would have been subject to seizure by the sheriff to be made available, by enforcing the rights of the bank therein for the benefit of the attaching creditor. It is true, after the payment of the note of Pitts with the firm assets the interest of the partnership therein came from subrogation, and was, therefore, equitable. In this respect it differed from the interest of the bank before it had received payment. Hence, the question arises whether an equitable interest in personal property is subject to attachment. The conclusion of the Circuit Judge that such interests are not subject to attachment under our Statute must be rejected.

Equitable interests have been held in this State not to be subject to levy under execution. *Wylie* v. *White,* 10 Rich. Eq., 294; *Richards* v. *McKie & Morgan,* Harper, 152. This view of the law was in accord with that of the United States Supreme Court. *Lessee of Smith & Carey* v. *McCann,* 65 U. S., 389, 16 L. Ed., 714. The same rule has been applied to attachments by holding that equitable interests cannot be subjected under warrant. *Badlam* v. *Tucker* (Mass), 11 Am. Dec., 202; *Rosenthal* v. *Circuit Judge* (Mich.), 39 Am. St. Rep., 535; *Van Norman* v. *Jackson Circuit Judge* (Mich.), 7 N. W., 796.

In Drake on Attachments, Section 244, the general proposition is laid down that property which cannot be sold under execution cannot be attached. To remedy the inconvenience, delay and expense incident to the exclusion of equitable interests from levy, Statutes have been passed in several States providing so broadly that all property of the debtor shall be subject to levy under attachment and execution, that the Courts have not hesitated to hold the Statutes to cover equitable interests in both real and personal property. *Pratt et al.* v. *Thomas et al.*, 9 Cranch, 456, 3 L. Ed., 791; *Reynolds* v. *Fleming* (Minn.), 45 N. W., 1099; *Hook* v. *Thresher Co.* (Minn.), 98 N. W., 463; *Wright* v. *Bank* (Ohio), 51 N. E., 876; *Higgins* v. *McConnell* (N. Y.), 29 N. E., 978.

An examination of the present attachment law of this State leads to the conclusion that it was intended to be highly remedial, subjecting to attachment all property interests of the debtor, whether legal or equitable. Section 253, of the Code of Procedure, provides: "The sheriff or constable to whom such warrant is directed and delivered shall immediately attach all of the real estate of such debtor, and all of his personal estate, including money and bank notes, except such real and personal estate as is exempt from attachment, levy or sale by the Constitution, and shall take into his custody all books of account, vouchers and papers relating to the property, debts, credits and effects of such debtor, together with all evidences of his title to real estate, which he shall safely keep, to be disposed of as hereinafter directed." Section 254 makes the sheriff act as *quasi* receiver under the direction of the officer who issued the warrant and requires him to "collect, receive and take into his possession, all debts, credits and *effects* of such debtor, and commence such suits, and take such legal proceedings, either in his own name or *in the name of such debtor* as may be necessary for that purpose, prosecute and discontinue the same at such time and discontinue the same at such time and on such terms as the Court

may direct." Section 260 allows the actions to be prosecuted by the plaintiff or under his direction upon the execution of the undertaking therein provided for. Section 256 makes liable to attachment "rights or shares which such defendant may have in any vessel or in the stock of any association or corporation together with the interests and profits therein, *and all other property in this State of such defendant.*" Section 258 provides: "Whenever the sheriff or constable shall, with a warrant of attachment or execution against the defendant, apply to such officer, debtor or individual, for the purpose of attaching or levying upon such property, such officer, debtor, or individual shall furnish him with a certificate, under his hand, designating the number of rights or shares of the defendant in the stock of such association or corporation, with any dividend or *encumberance thereon,* or the amount and description of the property held by such association, corporation or individual, *for the benefit of or debt owing* to the defendant.

From these provisions of the Statute, especially the expressions we have italicized, it is obvious the intention was to subject to attachment process every property interest of the debtor—not only that which is legal and that capable of actual seizure, but that which is equitable and that requiring actions either at law or in equity to make it available for the payment of the attachment debt. The change thus made in the attachment law of this State was radical. In one comprehensive enactment not only are the remedies of attachment and garnishment provided for, but the methods of actual seizure, of service of the copy of the writ and notice, of *quasi* receivership, and of appropriate suits against third persons for subjecting any kind of property interest, equitable as well as legal, to the warrant of attachment.

For these reasons we think the Circuit Judge was in error in charging the jury that the equitable interest of Pitts & Hartzog in the certificates of stock was not subject to attachment and in directing a negative response to the issue.

The judgment of this Court is that the judgment of the Circuit Court be reversed and the cause remanded for a new trial of the issue arising out of the claim of Mrs. Pitts.