16381

CHARLES R. ALLEN, INC., v. RHODE ISLAND INS. CO.
CHARLES R. ALLEN, INC., v. PAN AMERICAN FOOD
PRODUCTS
(60 S. E. (2d) 609)

298

*Messrs. Sinkler, Gibbs & Simons,* of Charleston, *for Appellant,*

*Messrs. Buist & Buist,* of Charleston, *for Respondent,*

*Messrs. Sinkler, Gibbs & Simons,* of Charleston, *for Appellant,*

July 6, 1950.

OXNER, Justice.

The parties to this controversy are (1) Charles R. Allen, Inc., a South Carolina corporation engaged in buying and selling food and food products, with its principal place of business at Charleston; (2) Pan American Food Products, Inc., a corporation under the laws of Puerto Rico engaged in processing foods at Bayamon, Puerto Rico; and (3) Rhode Island Insurance Company, a corporation under the laws of Rhode Island, which does business in South Carolina and has an office and agent at Charleston. Although not a party to this action, there was also involved in the transaction hereinafter mentioned Banco de Ponce, a banking corporation under the laws of Puerto Rico, with its banking house at San Juan. The four corporations mentioned will be hereinafter referred to, respectively, as Allen, Pan American, Rhode Island and the Bank.

The questions to be determined on this appeal can better be understood after the facts leading up to this controversy are stated.

On February 1, 1948, a fire occurred in Pan American's plant which completely destroyed its machinery, equipment and stock of goods. The machinery was insured under a Rhode Island Policy for $35,000.00 and the stock of goods under another Rhode Island policy for $145,000.00, or a total insurance of $180,000.00. Both policies carried a loss payable clause in favor of the Bank to which Pan American

was indebted at the time of the fire in the principal sum of approximately $120,000.00, evidenced by a number of promissory notes. Shortly thereafter Pan American delivered to the Bank additional notes for about $15,000.00.

Pan American was indebted to Allen in the sum of $5,633-.80 on account of advances made by Allen under a contract for the purchase of canned pineapple. Immediately after the fire Pan American notified Allen that owing to the complete destruction of its plant and warehouse, it would be unable to make deliveries but there was ample insurance to pay all claims, including Allen's. Allen was also assured by the Bank that its indebtedness would be paid from the proceeds of the insurance.

On April 13, 1948, Pan American filed with Rhode Island sworn proofs of loss under both policies which listed the actual value of the machinery and equipment destroyed as $48,947.57, and the value of the stock of goods destroyed as $163,749.16, making a total loss of $212,696.73. Pan American asserted in these proofs of loss a claim of $180,000.00, the total amount of insurance, and it was stated therein that the interest of the Bank under the machinery policy was $5,-500.00 and under the policy on the stock of goods $120,534-.62, or a total interest on the part of the Bank under both policies of $126,034.62. On the face of the proofs of loss, therefore, Pan American's interest in the insurance was $53,965.38.

During the early part of May, Allen's president telephoned the New York agent of Rhode Island who was handling the loss and advised him of the assurance previously given by Pan American and the Bank that Allen's claim would be paid, and inquired as to the status of the insurance. This agent replied that he was not sure what Rhode Island was going to do as the proofs of loss were not filed within time and the loss was looked upon "as very ugly". Allen's president expressed surprise that there was any question about the payment of the insurance. He was then told by this

agent that he would be kept in touch with developments and that it would probably be some time before final action was determined. A few weeks later Allen brought suit against Pan American in the Court of Common Pleas for Charleston County, serving it by publication, and on May 31, 1948, procured in that action an attachment against the insurance debt owing to Pan American by Rhode Island. Jurisdiction of Rhode Island was acquired by service upon its Charleston agent and upon the Insurance Commissioner.

On June 30, 1948, Pan American executed two instruments, thereafter delivered to Rhode Island, on forms used in making proofs of loss, but the obvious intent and effect of which was an agreement by Pan American to compromise the machinery loss for $5,500.00 and the loss on the stock of goods for $122,282.50. In fact, it was so designated on the instrument relating to the machinery loss. On July 9th, Rhode Island issued two checks to the Bank in the above amounts which were stated to be "in full satisfaction of all claims and demand" under said policies on account of the loss which occurred on February 1st. These checks were paid in due course. Although not appearing in the record, presumably the insurance policies were surrendered to Rhode Island at the time the settlement was made.

Thus, Pan American's loss, which on April 13th it had declared under oath to be $212,696.73, was compromised six weeks later for $127,782.50. This was done without any notice to Allen, although Rhode Island had definitely promised Allen's president that his company would be kept posted on all developments and the Bank had assured Allen that its claim would be paid from the insurance. The settlement was consummated without any regard whatsoever for the attachment of the debt of Rhode Island to Pan American which had been made four or five weeks previously in the action commenced in the Court of Common Pleas for Charleston County. There is no suggestion in the record that the compromise grew out of any disagreement as to the

amount of actual loss. In fact, no explanation whatsoever is given for the basis of this settlement, although the New York agent of Rhode Island had mentioned in the telephone conversation had with Allen's president that the origin of the fire was suspicious and that the proofs of loss were not filed within time. It is a fair inference that the amount of the compromise settlement represented approximately the indebtedness owing by Pan American to the Bank. The policies were not produced, so that it does not appear whether the interest of the Bank in the insurance was or was not affected by any violation of the policy conditions by Pan American.

No appearance was made by Pan American in the action commenced in the Court of Common Pleas for Charleston County and a default judgment was entered against it for $5,663.80 and costs on August 19, 1948. Thereafter on petition filed by Allen in said action, the Court directed Rhode Island to show cause before the presiding judge of the Court of Common Pleas at the October term why it should not pay the judgment out of Pan American's interest in the insurance. Rhode Island made an oral return, denying that it was indebted to Pan American. On October 27, 1948, the Court issued an order referring the cause to the Master for Charleston County for the purpose of taking any testimony offered by the parties and reporting his conclusions of law and fact thereon. In this order Rhode Island was required at the hearing to be held before the Master to produce the policies and any documents in its possession relating to a settlement of the loss, and to answer concerning the alleged indebtedness by it to Pan American, with the right at the same time to offer any evidence it wished regarding its liability under said policies.

A reference was held before the Master on February 8, 1949. The insurance company failed to produce the insurance policies or copies thereof, claiming that they could not be located. It produced its daily reports showing the coverage, the proofs of loss filed and various other documents relating

to the settlement. These were introduced in evidence by Allen, along with certain correspondence between the parties. Allen's president was sworn and testified. No testimony was offered by Rhode Island. The attorney for Rhode Island contended at the reference (1) that the policies "were assigned outright to the Bank" which authorized it in dealing solely with the Bank in adjusting the loss (2) that because "of the outright assignment of the policies", there was no indebtedness by it to Pan American; and (3) that if there were any such indebtedness, "it was on an unliquidated debt not subject to attachment." All these defenses raised legal issues and no substantial isue of fact. At the conclusion of Allen's testimony, the attorney for Rhode Island asked that the reference be continued for the purpose of allowing it to offer testimony. This request was refused by the Master and the reference closed.

A report was duly filed by the Master in which he found that Pan American had an interest in the insurance which was subject to attachment, and that Rhode Island could not defeat the attachment by a subsequent compromise settlement with Pan American. Accordingly, the Master recommended that Rhode Island be required to satisfy the judgment which Allen had obtained against Pan American.

On exceptions by Rhode Island to the report of the Master, the case was heard by the Presiding Judge of the Court of Common Pleas in November, 1949. On November 29, 1949, a decree was filed reversing the Master and dismissing Rhode Island from the suit. The Court held: (1) That the legal effect of the loss payable clauses in the policies was to give the Bank the sole and exclusive right to collect the entire amount of insurance payable even though it exceeded the amount of the indebtedness owing to it by Pan American and, therefore, Rhode Island never became indebted to Pan American. (2) That even if the loss payable clauses were construed as conferring no right on the Bank to collect the insurance beyond the amount of its debt, the

evidence showed that the loss had been compromised for not more than the Bank's debt, and there being no evidence of fraud in connection therewith, Rhode Island and Pan American had a right to make the compromise even though the effect was to defeat the attachment. The case is now before us on appeal by Allen from this order.

In *Pelzer Mfg. Co. v. Pitts & Hartzog,* 76 S. C. 349, 57 S. E. 29, 33, 11 Ann. Cas. 665, the Court, after analyzing the various provisions of our attachment statute, said that the obvious intention "was to subject to attachment process every property interest of the debtor—not only that which is legal and that capable of actual seizure, but that which is equitable, and that requiring actions either at law or in equity to make it available for the payment of the attachment debt." The interest of the debtor subject to attachment includes any indebtedness owing to him by a third party. *Williamson v. Eastern Building & Loan Association,* 54 S. C. 582, 32 S. E. 765, 71 Am. St. Rep. 822; *McKelvay v. South Carolina R. Co.,* 6 S. C. 446.

Under attachment statutes similar to ours, the great weight of authority is to the effect that an unadjusted claim for loss under a policy of insurance is subject to attachment or garnishment in the hands of the insurance company. *Sexton v. Phoenix Insurance Co.,* 132 N. C. 1, 43 S. E. 479; *American Insurance Co. v. Black,* 46 Ga. App. 471, 168 S. E. 85; *Ackerman v. Tobin,* 8 Cir., 22 F. (2d) 541. This is true even though the insurance company denies any indebtedness to the insured. *Sexton v. Phoenix Insurance Co., supra; Ackerman v. Tobin,* 8 Cir., *supra;* Mechanics' *& Traders' Bank v. Dakin,* 51 N. Y. 519. The fact that such a claim is subject to attachment does not, of course, preclude the insurer from contesting liability on the policy and asserting any defense it may have. In recognizing the validity of an attachment made in New York against indebtedness owing by a New York insurance company to a resident of this State on account of a fire loss, this Court in *Campbell*

*v. Home Insurance Co.*, 1 S. C. 158, said: "If the debt is denied, the sheriff is put to his action against the person alleged to be indebted to the non-resident debtor, in which action such person appears and defends as to any right that he may possess, as against the sheriff claiming in right of the attaching creditors." We find nothing in *Brown Construction Co. et al. v. Massachusetts Bonding & Insurance Co. et al.*, 176 S. C. 76, 179 S. E. 697, relied on by respondent, in conflict with the views herein expressed. We conclude that if Pan American had any interest in this insurance, it was subject to attachment.

We next consider Rhode Island's contention that there was never any obligation on its part to pay Pan American any part of the insurance money. This contention is based on the loss payable clause in each policy, which was as follows: "Loss, if any, under this policy, shall be payable to the Bank De Ponce." Counsel for Rhode Island state in their brief that if there had been added after the name of the payee in these clauses the words "as its interest might appear," frequently found in loss payable clauses, these words would have put "the insurance company upon notice that payment of the loss to the third party alone, unless it has been proven that the interest of the third party equalled or exceeded the loss, will not release the insurance company from its liability." But it is said that where these words are not added, "the sole obligation to pay on the part of the insurance company is its obligation to pay the third party named." We do not agree that under the circumstances of this case there was no obligation by Rhode Island to Pan American. We think the clauses should be construed as leaving vested in Pan American the right to collect the insurance in excess of the amount of its debt to the Bank, which excess was subject to Allen's attachment.

Loss payable clauses of the type used in the policies before us are generally known as simple or "open" clauses. Such a clause does not create a new and inde-

pendent contract between the insurance company and the third party. The party named does not recover in the event of loss as the party insured but as the beneficiary under the policy in the right of the insured. Such a clause does not operate as an assignment of the policy. The party to whom the loss is payable is a mere nominee of the owner-insured to receive the insurance money. Hence it is the damage sustained by the party insured and not by the party appointed to receive payment that is recoverable from the insurer. *Walker v. Queen Insurance Co. et al.,* 136 S. C. 144, 134 S. E. 263, 52 A. L. R. 259; Annotation 124 A. L. R. 1034.

On account of the failure of Rhode Island to produce the insurance policies, there has been no opportunity to examine them for the purpose of determining the exact phraseology of the loss payable clauses. The only information thereabout was obtained from the daily reports of Rhode Island's agents. It may very well be that these reports do not accurately reflect the exact terms used in the policies but this is immaterial. The Bank has never claimed that it was entitled to receive from Rhode Island more than the amount of indebtedness owed to it by Pan American. In fact, in its letter to Allen under date of April 20, 1948, the Bank stated that the policies were assigned to it "as (its) interest may appear." In the sworn proofs of loss filed by Pan American on April 13, 1948, the respective interests of the Bank and Pan American in the insurance policies were definitely shown. Prior to the settlement of the loss, Rhode Island had full knowledge of the interests of both the Bank and Pan American in the proceeds of the insurance and had further knowledge that the interest vested in Pan American had been attached in the action pending in the Court of Common Pleas for Charleston County. It is difficult to perceive under these circumstances how the addition in the loss payable clauses of the words "as its interest may appear", could have imparted to Rhode Island any knowledge that it did not already have. It would be illogical and unjust to

say that Rhode Island was not bound to respect the interests of the parties in the proceeds of the insurance.

The principle involved in *Gibbes Machinery Co. v. Niagara Fire Insurance Co.,* 119 S. C. 1, 111 S. E. 805, 21 A. L. R. 1460, is somewhat analogous to the situation before us. In that case a mortgagor agreed to insure an automobile for the protection of the mortgagee. He had the car insured and the fact that the machine was mortgaged was stated in the policy, but the mortgagor failed to have attached a clause providing that the loss, if any, should be payable to the mortgagee. Later the car was damaged by fire. Although the company had notice of the mortgage indebtedness, it paid the loss to the mortgagor. Thereafter the mortgagee brought suit against the insurance company for the amount of the loss. This Court held that the insurer was liable to the mortgagee for the proceeds of the policy.

Having concluded that Pan American had an interest in the proceeds of the policy which was subject to attachment, we now inquire whether Rhode Island had a right after the attachment to compromise and settle its liability to Pan American. It is contended that the demand was unliquidated and, therefore, could be adjusted and settled by the insurer and insured in the absence of fraud. This contention cannot be sustained. After the service of the writ of attachment, Pan American's interest in the proceeds of the policy was *in custodia legis* and Rhode Island became a mere stakeholder. It could not, without an order of Court, pay the attached debt or do any act which would injure the rights of the attaching creditor. After the attachment, Pan American had no right which it could compromise. All of its rights and interests were then under the control of the Court and subject to its order.

As supporting the contention that the insurer and insured could, in the absence of fraud, compromise the loss, counsel for Rhode Island cite *Orenstein et al. v. New Jersey Insurance Co.,* 131 S. C. 500, 127 S. E. 570. It was there held

that a bank, to which a fire insurance policy was payable as its interest might appear, was bound by an award fixed by appraisers chosen by the insured and insurer under the terms of the policy, and was not entitled to name an appraiser or participate in the appraisal proceedings. The Court pointed out that the bank was not a party to the contract nor an assignee. The situation here is different. Pan American was a party to the contract and clearly entitled to be heard in determining the amount of the loss. Allen, as the attaching creditor, was subrogated to all the rights of Pan American.

It is suggested that the amount paid represented a fair settlement of a legitimate dispute and that it was incumbent upon Allen to prove that the obligation of Rhode Island exceeded the amount of Pan American's indebtedness to the Bank. We think the facts shown by Allen were sufficient to establish a prima facie liability for the full amount of the policies. Neither at nor before the reference did Rhode Island ever raise any issue as to the amount of loss. There is nothing in the record to show that the loss was less than the insurance carried or that any consideration of this kind entered into the settlement. It appears that the machinery and equipment were insured for $35,000.00 and the value thereof as disclosed in the sworn proof of loss by Pan American was $48,947.57. Yet the loss under this policy was compromised for $5,500.00. There is no basis for a conclusion that the machinery and equipment destroyed were worth only $5,500.00. As we have endeavored to point out, after the attachment no right whatsoever remained in Pan American to authorize a compromise settlement. That could have only been done by the Court of Common Pleas for Charleston County. The solemn process of that Court was entirely ignored.

The foregoing conclusions render it unnecessary to pass upon the question of fraud. However, we have no hesitancy in saying that the conduct of Rhode Island in this litigation, in failing voluntarily to make a full disclosure of all the

circumstances of this compromise, does not leave it clear of suspicion.

Rhode Island contends, and the Court below held, that the master erred in not continuing the reference for the purpose of allowing Rhode Island to introduce testimony in reply. The case was referred to the Master in October, 1948, under an order requiring Rhode Island to make a full disclosure as to any indebtedness growing out of the loss under said policies, the Court stating that such "information is peculiarly within the knowledge of Rhode Island Insurance Company." The reference was not held until February 8th, almost four months later. The delay was at the request of counsel for Rhode Island who seemed to have had difficulty in obtaining from their client the information required by the order. In response to the rule to show cause issued by the Court, the only return made by Rhode Island was an oral one denying the existence of any indebtedness. The basis of this denial was not disclosed. The only positions taken at the reference by Rhode Island were that it was never obligated to pay the loss to Pan American and that if it owed any obligation to Pan American, it was on an unliquidated demand which was not subject to attachment. These contentions raised only legal questions. It is true that there was some intimation that the fire was of incendiary origin and it appeared that there was some question as to whether the proofs were filed within time, but these defenses were never definitely asserted. It was not sufficient for Rhode Island to insinuate or intimate but it should have unqualifiedly stated at the reference any defenses it had to liability on said policies. Ample time had been allowed to make a return. If Rhode Island anticipated introducing testimony, it should have been prepared to do so at this reference. The able Master was more familiar with the circumstances than either the Circuit Judge or this Court. We do not think he abused his discretion in refusing to continue the reference.

The only other question relates to the admission by the Master of certain correspondence between the parties. Perhaps some of the declarations contained in these letters were inadmissible but there was no prejudical error. The only feature of them that we have considered is a statement in the letter by the Bank to the effect that the policies had been assigned to it as its interest might appear. We think this was relevant as showing that the Bank never made any claim to the proceeds of the policies in excess of the indebtedness to it, a fact which is undisputed.

The order appealed from is reversed. Rhode Island is required to deposit in the Court of Common Pleas for Charleston County a sufficient amount to discharge the judgment there entered against Pan American, with interest and costs; and the case is remanded for further proceedings in conformity with the views herein expressed.

FISHBURNE, STUKES and TAYLOR, JJ., and E. H. HENDERSON, A. A. J., concur.

BAKER, C. J., not participating.