17540

Charles R. ALLEN, INC., Plaintiff-Respondent v. ISLAND COOP-
ERATIVE SERVICES COOPERATIVE ASSOCIATION, LIM-
ITED, Defendant, and The Bank of Nova Scotia, Appellant.

(109 S. E. (2d) 446)

538

*Messrs. Mitchell & Horlbeck* and *Barnwell, Whaley & Stevenson,* of Charleston, *for Appellant,*

*Messrs. Sinkler, Gibbs & Simons,* of Charleston, *for Respondent,*

*Messrs. Mitchell & Horlbeck* and *Barnwell, Whaley & Stevenson,* of Charleston, *for Appellant,* in Reply.

June 8, 1959

Moss, Justice.

Charles R. Allen, Inc., a South Carolina corporation, the respondent herein, brought this action against Island Co-Operative Services Co-Operative Association, Ltd., a Canadian corporation, hereinafter referred to as "Island Co-op.", to recover damages for breach of contract.

It appears from the record that Island Coop. sold some seed potatoes to Charleston County Wholesale Vegetable Market, Inc., of Charleston, South Carolina, for a purchase price of $19,620. It appears that the potatoes were shipped to John T. Leonard, agent of Island Coop., for delivery to the vegetable market. After the potatoes had been shipped by boat, Island Coop. did, on February 7, 1955, draw a draft on the Vegetable Market of Charleston for the purchase price of said potatoes in the amount of $19,620.00, payable to the order of The Bank of Nova Scotia, at Charlottetown, Prince Edward Island, Canada, the appellant herein. Island Coop. offered the aforesaid draft, along with other drafts, to the appellant for discount. This draft, along with other drafts, discounted by the appellant on February 7, 1955, was accompanied by the following agreement:

"1. The above bills, which represent amounts due to us for goods sold and delivered, are offered for discount. Our claims against Drawee are hereby transferred to you in the event of non-acceptance of any draft. The relative goods have already been shipped.

"2. Credit Proceeds to Current A/C/ Savings A/C No. _____."

The appellant endorsed the draft in question and forwarded same through its correspondent, The Bank of New York, to the South Carolina National Bank of Charleston for collection. The draft was paid by the drawee on February 14, 1955, and the proceeds thereof were immediately attached by the Sheriff of Charleston County, South Carolina, as the property of Island Coop.

After the attachment, The Bank of Nova Scotia served a claim upon the respondent, stating that the proceeds of the draft which had been attached belonged to it. Island Coop. made a special appearance for the sole purpose of objecting to the jurisdiction of the Court and moved to vacate and set aside the service of the summons upon the ground that it did not own the property attached. The respondent served notice upon the appellant that it denied and would contest the claim of appellant to the proceeds of the draft, and gave notice that it would move for an order framing an issue on the question of whether The Bank of Nova Scotia had any legal or equitable interest in the proceeds of the draft, and to refer this issue to the Master of Charleston County for the purpose of taking the testimony thereabout.

Upon a hearing being held on the motion of the Coop. to set aside the service of the summons, the respondent argued that an issue of who was entitled to the proceeds of the draft should be framed and referred to the Master. This hearing resulted in an order of the lower Court vacating and setting aside the service of the summons upon Island Coop. on the ground that it had no interest or equity in the proceeds of the draft, and that the appellant bank was the outright owner of the said draft. Thereafter, the respondent here made a motion for a new trial on the ground of after-discovered evidence, and renewed its motion that the matter be referred for the taking of testimony regarding the ownership of the proceeds of said draft. This motion was refused. The respondent appealed from the two orders of the lower Court to this Court. The appeal was based upon the question of whether an issue should have been framed for trial as to the ownership of the proceeds of the draft. In reversing the orders of the lower Court and in remanding the case for the trial of the issue of the ownership of the attached property, we said:

"While we do not undertake to pass upon the merits, a careful consideration of the affidavits and exhibits leads to

the conclusion that a substantial question is presented as to the ownership of the attached funds which can better be determined by testimony with the right of cross examination. As pointed out in *Campbell v. Noble-Trotter Rice Milling Co., Inc. (Ex parte Calcasieu-Marine National Bank)*, 188 S. C. 212, 198 S. E. 373, and numerous other authorities, whether the Bank of Nova Scotia took this paper merely as an agent for collection or as a purchaser depends upon the intention of the parties, as shown by the attending circumstances." *Charles R. Allen, Inc., v. Island Co-op. Services Co-op. Ass'n, Ltd.*, 229 S. C. 313, 92 S. E. (2d) 851, 855.

After this case had been remanded to the lower Court, and in compliance with the mandate of this Court, the lower Court issued an order referring the cause to the Master of Charleston County to take the testimony and to report his recommendations thereon upon the following issue:

"Was the Bank of Nova Scotia, at the time of the attachment on the 14th day of February, 1955, the owner of the proceeds of the draft in the amount of $19,620.00, dated February 7, 1955, drawn by the Defendant as Drawer on Charleston County Wholesale Vegetable Market, Inc., and payable to the order of the Bank of Nova Scotia, at Charlottetown, PEI, which proceeds of said draft, when paid by the Drawee, were attached in the hands of the South Carolina National Bank on the said 14th day of February 1955, at the instance of the Plaintiff in this suit?"

The said order of reference further provided in connection with the issue above framed for trial, that the burden of proof should rest upon the respondent to show ownership of said draft by Island Coop. rather than upon the appellant for whom as payee The South Carolina National Bank, as collecting agent, had possession of the property attached. There was no appeal from this order.

The Master of Charleston County held several references, at which testimony of various persons was taken and many documentary exhibits introduced. The appellant introduced its testimony by depositions.

The Master filed his report on March 18, 1958, in which he found that the appellant had taken the draft in question as an agent for collection, rather than as a purchaser. He, therefore, sustained the attachment and recommended that the respondent be allowed to proceed with the trial of this case on the merits.

The appellant filed numerous exceptions to the report of the Master, contending that the Master was in error in holding that The Bank of Nova Scotia had taken the draft in question for collection, rather than as an outright purchaser, that the law of Canada controlled, and the Master had committed error in admitting certain matters into evidence. The exceptions to the reports of the Master were argued before the Honorable T. B. Greneker, Presiding Judge, on April 25, 1958. Thereafter, the Presiding Judge filed a decree overruling all of the exceptions to the report of the Master and confirmed same. The case is before this Court upon twenty-six exceptions to the order of the Presiding Judge.

In considering the questions raised in this case, it should be kept in mind that if Island Coop. had an interest in the proceeds of the draft hereinbefore referred to, it was subject to attachment. In the case of *Charles R. Allen, Inc., v. Rhode Island Ins. Co.,* 217 S. C. 296, 60 S. E. (2d) 609, 612, this Court said:

"In *Pelzer Mfg. Co. v. Pitts & Hartzog,* 76 S. C. 349, 57 S. E. 29, 33, 11 Ann. Cas. 665, the Court, after analyzing the various provisions of our attachment statute, said that the obvious intention 'was to subject to attachment process every property interest of the debtor—not only that which is legal and that capable of actual seizure, but that which is equitable, and that requiring actions either at law or in equity to make it available for the payment of the attachment debt'. The interest of the debtor subject to attachment includes any indebtedness owing to him by a third party. *Williamson v. Eastern Building & Loan Association,* 54 S. C. 582, 32 S. E. 765, 71 Am. St. Rep. 822; *McKelvay v. South Carolina R. Co.,* 6 S. C. 446."

The respondent in this case, being an attaching creditor, could acquire no greater right in the proceeds of the draft in question than Island Coop. had. In the case of *H. J. Baker & Bro. v. Doe,* 88 S. C. 69, 70 S. E. 431, 433, 34 L. R. A., N. S., 510, it was held as follows: ·

"A fundamental principle is that an attaching creditor can acquire no greater right in attached property than the defendant had at the time of the attachment. If, therefore, the property be in such a situation that the defendant has lost his power over it, or has not yet acquired such interest in, or power over, it, as to permit him to dispose of it adversely to others, it cannot be attached as his debt. Drake on Attachment, § 243."

The jurisdiction of the lower Court was obtained by virtue of the attachment of the proceeds of the draft in question. If Island Coop. had no interest in the proceeds of the draft it is fatal to jurisdiction and the attachment should have been set aside. *Cleveland v. Cannady,* 112 S. C. 477, 100 S. E. 147; *Greenwood Grocery Co. v. Canadian County Mill & Elevator Co.,* 72 S. C. 450, 52 S. E. 191, 2 L. R. A., N. S., 79, 110 Am. St. Rep. 627, 5 Ann. Cas. 261; *La Varre v. International Paper Co.,* D. C., 37 F. (2d) 141.

The basic question for determination in this case is whether the appellant, Bank of Nova Scotia, was the absolute owner of the proceeds of the draft at the time of the attachment of the funds by the respondent. If the appellant was the owner thereof, and Island. Coop. had no interest therein, then this action must fail. There are other incidental questions which will be disposed of in the course of this Opinion.

The respondent takes the position that this Court is without jurisdiction to review the findings of fact made by the Master in a law case and affirmed by the Circuit Judge, when supported by evidence. This case is one at law and was tried as is provided for in Section 10-929 of the 1952 Code of Laws of South Carolina, to determine the issue of the ownership of the proceeds of the draft in question. It is true that this Court is without jurisdiction

to reverse the findings of fact of a Circuit Judge in a case at law if he had before him any evidence whatever to support his findings. This accords with the 1895 Constitution of this State, Art. V, Sec. 4. *Weston v. Morgan,* 162 S. C. 177, 160 S. E. 436; *Sumter Electric Rewinding Co. v. Aiken County S. C. Clays, Inc.,* 230 S. C. 229, 95 S. E. (2d) 259. However, we can review the facts on appeal to determine whether there was any evidence to sustain the findings made by the Master and the Circuit Judge. *Phillips v. Dubose,* 223 S. C. 224, 75 S. E. (2d) 56; *Robinson v. Carolina Casualty Ins. Co.,* 232 S. C. 268, 101 S. E. (2d) 664.

Island Coop. is a Canadian concern operating in the Province of Prince Edward Island, Canada, and is engaged in the export of seed potatoes. The respondent is a South Carolina corporation, engaged in general mercantile business in the City of Charleston, South Carolina. The Bank of Nova Scotia, the appellant herein, is a Canadian Banking Association and maintains a branch at Charlottetown, Prince Edward Island, Canada. In November, 1954, the Vegetable Market of Charleston purchased from Island Coop., through John T. Leonard, its local agent and representative, 4,905 bags of seed potatoes. The potatoes in question were shipped by Island Coop. as a part of the cargo of more than 13,000 bags of seed potatoes on the ship "Rexton Kent", which sailed from Halifax, Nova Scotia, on February 4, 1955, bound for Charleston, South Carolina. The consignee of the entire shipment was John T. Leonard of Charleston, South Carolina, the local agent and representative of Island Coop. The "Rexton Kent" was under charter to Island Coop. and it arrived in Charleston, South Carolina on February 10, 1955. The Vegetable Market was notified by Leonard when the potatoes arrived in Charleston. The representative of the Vegetable Market inspected the potatoes, and on finding that they were in excellent condition, the Vegetable Market paid the draft in question to the South Carolina National Bank on February 14, 1955. Upon payment of the draft,

the potatoes were released to the Vegetable Market. It appears from the record that there was no bill of lading or certificate of insurance attached to the draft. When the draft was paid it was not delivered by the South Carolina National Bank to the Vegetable Market until some days thereafter. However, the potatoes were released by Leonard to the Vegetable Market. It should be pointed out that Leonard was agent for Island Coop. and not an agent for the appellant.

It appears from the record that on February 7, 1955, Island Coop. discounted with the appellant two drafts drawn on Cantrell Produce Company of Hendersonville, North Carolina, and three drafts drawn upon the Vegetable Market of Charleston, South Carolina, and included in the said five drafts was the one for $19,620.00.

The respondent, pursuant to stipulation, offered as evidence the affidavits of B. M. Cantrell, who was engaged in the produce business in Hendersonville, North Carolina, under the name of Cantrell Produce Company, and Arthur J. Redden, his attorney, wherein the affiants testified that on February 15, 1955, in order to collect a claim against Island Coop., B. M. Cantrell instituted an action in attachment against said Island Coop. for $5,500.00. The action was instituted against State Trust Company of Hendersonville, North Carolina, by which the proceeds of two drafts drawn on the Cantrell Produce Company by said Island Coop., amounting to $11,584.36, were attached, subsequent to their payment by Cantrell Produce Company. It was further testified that The Bank of Nova Scotia interposed a claim in the attachment proceedings, claiming that the proceeds of the drafts belonged to it rather than to Island Coop.; that during the pendency of the action one Jerome O'Brien, an officer of Island Coop., came to Hendersonville, North Carolina, and settled Cantrell's claim by the payment of an agreed sum; that during the course of the negotiations between O'Brien, Cantrell and Redden, that O'Brien stated that Island Coop. had a credit arrangement with The Bank of Nova Scotia to the extent of some $80,000.00; and that

O'Brien would not have taken the trouble to come all the way from Canada to Hendersonville, North Carolina, if Island Coop. "had not been interested in the proceeds of the drafts which had been attached". It thus appears that the statement attributed to O'Brien was made some time after February 15, 1955, which was, in point of time, after The Bank of Nova Scotia had discounted the draft of $19,620.00 here involved. The stipulation entered into by counsel was that the affidavits of Cantrell and Redden could be introduced as depositions but the appellant objected to the contents thereof on the ground that the same were inadmissible and incompetent as evidence against Bank of Nova Scotia, and should be excluded because the transaction recited in the Cantrell and Redden affidavits were between other parties and on different negotiable instruments; that O'Brien was not an agent or officer of The Bank of Nova Scotia, and that the matters contained in said affidavits is hearsay as to The Bank of Nova Scotia, and the statements therein contained could not operate to divest the title of The Bank of Nova Scotia to the proceeds of the draft involved in this case, because the draft in question was at the time of the attachment of the proceeds thereof in the possession of the South Carolina National Bank of Charleston, as agent of The Bank of Nova Scotia, for its collection through the Bank of New York, from whom the said South Carolina National Bank received the said draft.

We think that the Master and the trial Judge were in error in admitting the evidence contained in the affidavits of Cantrell and Redden. There is no evidence in the record that O'Brien, Cantrell or Redden were agents of, or had any authority to speak for or bind The Bank of Nova Scotia.

In the case of *Davis v. W. H. Crozier & Co.,* 121 S. C. 99, 113 S. E. 377, 378, it appears that the defendant shipped a carload of oats to a firm at Anderson, South Carolina. The shipment was what is commonly known as " 'order notify' shipment". The draft for the purchase price of the oats was attached to the bill of lading and sent to a

bank in Anderson for collection. The draft was not paid and the oats were reconsigned to another destination. At the instance of the plaintiff certain of the oats contained in the shipment were attached. A bank in Nashville, Tennessee, claimed that it was legally entitled to the possession of the oats because it owned the draft and bill of lading. The question for determination was who was the owner of the oats at the time of the attachment. Upon the trial of this issue, a witness for the plaintiff testified that he had a conversation with the defendant and that "he said they were his oats and his draft". There was a directed verdict in favor of the Tennessee bank, and upon appeal by the plaintiff the Court held that the statement attributed to the defendant raised a question to be determined by the jury and that it was error to direct a verdict. Upon a reversal by this Court, a petition for a rehearing was filed, wherein it was asserted that the above quoted testimony was incompetent and should not have been received under the rule of law which forbids the acceptance of the statements of the assignor of a negotiable instrument to determine the rights of the holder thereof. This Court, in refusing the petition for a rehearing, said:

"The principle contended for, to wit, that evidence to show that an assignor or grantor has made statements derogatory to his title after the assignment or the execution of the grant is inadmissible, is unquestionably true, both in reason and on authority. The question as to the competence of the evidence was not raised on the trial."

See also in this connection the cases of *Crayton v. Collins*, 13 S. C. L. 457, 2 McCord 457; *De Bruhl v. Patterson*, 46 S. C. L. 363, 12 Rich. Law 363; and *Stouffer v. Erwin*, 81 S. C. 541, 62 S. E. 843.

We conclude that the declaration of a previous owner of a draft made after an assignment thereof is not relevant or competent evidence against an assignee thereof on the issue of ownership.

The testimony of The Bank of Nova Scotia, the appellant herein, was taken by depositions in Canada. The officials and

the clerks in the bank testified as to the handling of the account of Island Coop. and particularly the draft in question.

William Hayward, the manager of the Charlottetown branch of The Bank of Nova Scotia, testified that the bank maintains a collection department, and that drafts accepted for collection by the bank are handled by such department. He testified that the draft in question was not handled by this department but was handled by the discount clerks of the bank. He further testified that when a customer brings a bill of exchange to the bank, purporting to be for an amount owing by the drawee to the customer for commodities sold, and if the drawee is credit worthy, the bank discounts the draft and places the net proceeds, after deducting commissions and interest, to the credit of the customer's account. He then says, "When the money is so placed to the credit of the customer, the customer is entitled to withdraw it or otherwise use it without awaiting final payment of the draft to the Bank. It is as much within the customer's control as if he had brought the funds to the Bank and deposited them to his account. Only if the draft is returned unaccepted or finally unpaid can it be charged back to the customer's account". There was submitted along with this testimony a copy of the discount slip, dated February 7, 1955, directing credit to the account of Island Coop. of $37,179.85, being the aggregate proceeds of several discounted items, including the draft of $19,620.00, and showing interest deduction of $24.53 and $12.26 for commissions on this particular draft. The total credit above referred to was credited to Island Coop.'s account. He further testified that the proceeds of these discounted drafts were made immediately available to the customer and were used accordingly. He also says, that "The whole record shows an ordinary and customary transaction by which the bank purchased from the Island Co-operative Services Co-operative Association Ltd. for full value according to banking practice (being face value less discount commission and probable interest) the customer's draft, with (by the Bills

of Exchange Act) the right to claim against the customer, if the draft be unpaid. The draft itself then belonged to The Bank of Nova Scotia and was forwarded for collection to the bank's correspondents, the Bank of New York, New York, for transmittal to Charleston, South Carolina, together with whatever documents of security or title to goods were incidental to it." It should be pointed out that the witness Hayward was manager of the Charlottetown branch of The Bank of Nova Scotia from July 14, 1955 until the time he made his deposition.

Kenneth Roy Elliott was the manager of the Charlottetown branch of the appellant at the time Island Coop. discounted the draft in question. He testified that he approved the discount of the $19,620.00 draft. He says that it was an ordinary and customary transaction by which the bank purchased from Island Coop., for full value, the said draft less discount and probable interest. He says that:

"8. The draft itself then belonged to The Bank of Nova Scotia and was forwarded for collection to the Bank's correspondents, The Bank of New York, New York, for transmittal to Charleston, South Carolina, together with whatever documents or security or title to goods were incidental to it.

"9. Island Co-Operative Services Co-Operative Association, Limited, was, among others, a customer of the Charlottetown Branch aforesaid, whose bills we discounted and bought over a period of years and that Exhibit 'A' and the discounting of the face amount shown thereon was an ordinary transaction in the course of such business by which under my personal authority the Bank purchased for value the said draft."

Florence Ethel Simons, assistant accountant of the appellant, testified that on February 7, 1955, an item of $37,-179.85 was credited to the account of Island Coop.

Ola Beatrice Hamilton, discount clerk of the appellant, testified that the draft, dated February 7, 1955, and drawn by Island Coop. upon the Vegetable Market, requiring the payment of $19,620.00 to The Bank of Nova Scotia, passed

through her hands, and that she made out the discount slip the same day, and such slip contains other items discounted. She says that she made up the interest and commissions and deducted them from the gross amount and arrived at the net amount of $37,179.85, which included the net proceeds for the draft of $19,620.00. She testified that when she completed the discount slip, she passed it over to her superior, Edith Anderson. The discount slip was then given to the Current Accounts Department. She also says that the discount department does not handle collection items at all. The foregoing testimony is confirmed by the deposition of Edith Anderson, the discount supervisor of the appellant.

The discount slip, as is heretofore stated, shows that on February 7, 1955, the appellant discounted for Island Coop. two drafts of Cantrell Produce Company and three drafts of the Vegetable Market. The gross amount of said drafts being $37,255.11, and after deducting therefrom commissions and probable interest, the net proceeds amounted to $37,179.85. The draft in question being included therein.

The ledger sheet of Island Coop. in The Bank of Nova Scotia was offered in evidence. It shows that on February 7, that Island Coop. had an overdraft of $8,546.65. The ledger sheet likewise shows that on February 7, the item of $37,179.85 was deposited to the checking account of Island Coop. On the same date there were other deposits to the account of Island Coop. of $10,126.76, $12,323.89 and $262.21, making a total deposit on that day of $59,892.71, against which checks of Island Coop. paid by the bank on that day amounted to $27,681.15, leaving a new credit balance of $23,664.91. Thereafter, further deposits were credited from February 8 to February 11, 1955, aggregating $31,066.98, and further checks drawn thereon aggregating $43,647.16, leaving a new credit on February 11, 1955, of $11,084.73. It further appears from this ledger sheet that on February 14, 1955, the day the proceeds of the draft was attached in Charleston, South Carolina, that deposits aggregating $12,049.55 were made to this account, and charged with a check

of $6,130.91, leaving a credit balance on deposit of $17,-003.37. It further appears that the deposits and checks continued until February 21, 1955, on which ·day the credit balance was $1,364.81. It thus appears that Island Coop. exercised an unrestricted right to draw checks on its deposit account, which included the discounted draft here involved.

The appellant, in its claim to the proceeds of the draft here involved, asserted that under the laws of Canada that it had full and complete ownership and title to the draft and the proceeds thereof at the time of the attachment. The law of Canada has been proved to the effect that under the facts of this case surrounding the discount transaction as it took place in Canada, The Bank of Nova Scotia acquired under Canadian law ·an absolute title to and ownership of the draft in Canada at the time the draft was discounted on February 7, 1955. A consideration of the law of Canada and of the law of South Carolina, as applicable to the factual situation here, leads to the conclusion that the laws of Canada and of South Carolina are in accord. The application of the laws of Canada or of South Carolina requires us to reach the same conclusion. We will, therefore, as is contended for by the respondent, apply the law of South Carolina in this case.

It is the contention of the respondent that because the appellant had the right, in the event of nonpayment of the draft in question, to charge the dishonored draft back to the account of the depositor, that such showed that the appellant was a collecting agent and not the owner of the draft in question. This contention is contrary to the rule in this State. Likewise, the collection of interest upon the draft in question did not prevent the bank from becoming the sole owner thereof.

In the case of *Campbell v. Noble-Trotter Rice Milling Co., Inc. (Ex parte Calcasieu-Marine National Bank)*, 188 S. C. 212, 198 S. E. 373, 376, this Court ·completely answered these contentions when it said:

" 'According to the prevailing view, the rule as to the passing of title to commercial paper, deposited and credited as cash, applies, although the bank has the right to charge dishonored paper back to the depositor instead of proceeding against the maker.' Michie on Banks and Banking, Vol. 5, 65. (Citing numerous cases.)

"And it has been held that an interest arrangement will not prevent a bank from becoming the sole owner of a draft. Thus, where the bank advances the full amount of a draft, it becomes the unconditional owner, though it is understood it will collect interest on the amount advanced, depending upon the time it takes for collection. *Vickers v. Machine Warehouse & Sales Co.,* 111 Wash. 576, 191 P. 869."

In the case of *Southern Stove Works v. Converse Savings Bank,* 112 S. C. 230, 100 S. E. 75, 76, it was held:

"When a check or draft is drawn and handed to the bank, the bank credits its customer with that amount. If the draft, check, or item is not collected, or paid, the bank has the right to deduct it from the customer's account."

In the case of *Lee v. Marion Nat. Bank,* 167 S. C. 168, 166 S. E. 148, 160, referring to the case next above cited, this Court said:

"It follows from this holding that since the respondents have no right to recover these funds from the bank, it was in rightful possession of them. It is established law that when checks or drafts are deposited in a bank and the depositor is given credit for the amount, the title to the item passes to the bank."

In the case of *Lawton v. Lower Main Street Bank,* 170 S. C. 334, 170 S. E. 469, 471, it is said:

" * * * In other words, it is clear to our mind that it was not the purpose of the act to change (nor does it do so) the well-established rule of law that where an item is endorsed without restriction by a depositor, nothing appearing to indicate that it was received for collection, and

it is at once passed to his credit by the bank, and he is permitted to check upon the account, he becomes a creditor of the bank, which, as the owner of the paper, is not the agent of the depositor in collecting it but collects on its own behalf. Expressed differently, the act has no reference to nor does it control in a case where the bank receives the item, not for collection, but places it to the account of the depositor as a cash deposit and permits him to check thereon. In such case the relation of creditor and debtor is created between the depositor and the bank."

We think that under the authority of the case of *Campbell v. Noble-Trotter Rice Milling Co., Inc. (Ex parte Calcasieu-Marine National Bank), supra,* the lower Court must be reversed. The only factual difference between the present case and the *Campbell case* is that in the latter case the bank discounted a draft with a bill of lading attached, while here it discounted the draft only. This factual difference does not make the case inapplicable to the present situation.

In the *Campbell case* it appears that Noble-Trotter Rice Milling Co., Inc., a Louisiana corporation, drew a draft on Allen Bros. Milling Co., Columbia, South Carolina, which represented the purchase price of a shipment of rice. Attached to the draft was a bill of lading covering the shipment, an invoice thereof, and a certificate of insurance. This draft was made payable directly to the Calcasieu-Marine National Bank, located at Lake Charles, Louisiana, and was deposited on said date by the Rice Milling Company in that bank, where it maintained a regular account, and where it had been transacting its business for years. The draft, according to the contention of the bank, was not entered for collection, but was treated as cash and was immediately and unconditionally placed to the credit of Rice Milling Co. and made subject to its check.

In due course, the draft, together with attached papers, was forwarded by the bank for collection to the First National Bank, Columbia, South Carolina, where it was paid

by the drawee, Allen Bros. Milling Co. The day the draft was paid to the First National Bank of Columbia, South Carolina, the proceeds were attached by one M. P. Campbell for the satisfaction of an unliquidated demand against Noble-Trotter Rice Milling Co. The Louisiana bank intervened, claiming the proceeds of the draft by reason of its ownership thereof. Judgment was rendered in favor of Campbell and the case was appealed to this Court. The question for decision was whether the bank took the draft as owner thereof or as a mere collecting agent for the customer. This Court held that the Louisiana bank was entitled to the proceeds of the draft in question. It was said that the determination of the question of title to commercial paper transferred to a bank, which credits it to the depositor's account, involves a question of intention. The Court then discusses how it may be shown that the bank became the owner of the commercial paper rather than as a mere agent for collection, and it was expressly stated that the right accorded to a depositor to draw upon the funds is especially material as showing an intention that title should pass to the bank. It was stated that another means of ascertaining the intention is a consideration of the course of conduct or the ordinary course of business as disclosed by the evidence. It was also held that where there was a deposit of a draft in the ordinary course of banking business, whereby the depositor received from the bank an unconditional credit of the amount as cash against which the depositor had a right to draw with nothing to qualify the effect of such act, such operated *prima facie* to transfer title of the draft to the bank.

Applying the rule set forth in *Campbell v. Noble-Trotter Rice Milling Co.,* to the evidence in this case, and keeping in mind that the burden of proof was upon the respondent to show ownership of the draft by Island Coop. rather than by the Bank of Nova Scotia, we think that under the evidence the only conclusion that can be reached is that the respondent failed to carry the burden of proof. The evidence in behalf of the appellant is conclusive that it was the owner

of the draft in question. Island Coop. has been a customer of the appellant for a number of years, and over this period of time the bills of Island Coop. had been discounted. The draft in question was handled by the discount department rather than by the collection department of said bank. The bank upon discounting the draft in question, placed it without restriction and unconditionally to the checking account of Island Coop. and accorded to it the right to draw upon the funds, which said right was exercised. There is no evidence contradictory of these facts.

We call attention to a number of cases which have some bearing upon the views heretofore expressed. *First Nat. Bank of Chillicothe v. McSwain*, 93 S. C. 30, 75 S. E. 1106; *Merchants' Nat. Bank of Baltimore v. Bank of Ninety-Six*, 135 S. C. 339, 133 S. E. 910; *Ledwell v. Shenandoah Milling Co.*, 215 N. C. 371, 1 S. E. (2d) 841; *Fourth Nat. Bank of Montgomery, Ala. v. Bragg*, 127 Va. 47, 102 S. E. 649, 11 A. L. R. 1034; *Burton v. United States*, 196 U. S. 283, 25 S. Ct. 243, 49 L. Ed. 482.

The appellant raises a number of other questions but we find it unnecessary to pass upon them.

We conclude, after a consideration of all the facts in this case, that under the applicable law thereto, that the title to the draft in question passed to the Bank of Nova Scotia and that it is entitled to the proceeds now held in the custody of the South Carolina National Bank in Charleston, South Carolina.

The decision in this case applies to all of the companion cases.

Judgment reversed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.